Argued March 26; reversed May 28, 1940

# WINSLOW *v.* MINTO
(102 P. (2d) 919)

In Banc.

*E. M. Page*, of Salem (Keyes & Page, Paul R. Hendricks, City Attorney, and Lawrence N. Brown, all of Salem, on the brief), for appellant.

*W. C. Winslow,* of Salem (George P. Winslow, of Tillamook, and John H. Carson, of Salem, on the brief), for respondent.

ROSSMAN, J. This is an appeal by the defendant from a judgment of the circuit court, entered after trial, which directs that a writ of mandamus issue commanding him, the chief of the police department of the city of Salem, to reinstate the plaintiff as a member of that city's police department. The plaintiff, who was appointed a police officer of the city of Salem October 2, 1931, was discharged by an order of the defendant September 26, 1938. That order is the subject-matter of attack in this proceeding. The plaintiff contends that the order is invalid because the defendant did not try him upon the cause of removal stated in the order.

November 8, 1932, the charter of the city of Salem was so amended as to make it provide:

"Section 92-2. * * * The classified civil service of the City of Salem, Oregon, shall include all the employes of * * * the police department * * *. Except as hereinafter expressly provided, all appointments and promotions in the * * * police department * * * shall be made according to fitness which shall be ascertained by open competitive examinations, * * *. No person shall be * * * suspended or discharged from any such office, * * * contrary to the provisions of this act.

"Section 92-20. * * * The tenure of every one holding an office, * * * under the provisions of this act shall be only during good behavior, and any such persons may be removed or discharged for any of the following causes. (a) Incompetency, * * *; (b) * * * discourteous treatment of the public, * * *; (c) Mental or physical unfitness * * *.

"Section 92-21. * * * No person in the classified civil service who shall have been permanently

appointed or inducted into service under the provisions of this act, shall be removed or discharged except for cause, and only upon the written accusation of the appointing authority, or any citizen or taxpayer, a written statement of which accusation, in general terms shall be served upon the accused, and a duplicate filed with the commission. Any person so removed or discharged may within ten days from the time of his removal or discharge, file with the commission a written demand for an investigation, whereupon the commission shall conduct such investigation. The investigation shall be confined to the determination of the question of whether such removal or discharge was or was not made for political or religious reasons and was or was not made in good faith for cause. After such investigation the commission may affirm the removal, or, if it shall find that the removal was made for political or religious reasons or was not made in good faith for cause, shall order the immediate reinstatement * * * which reinstatement shall, if the commission so provides in its discretion, be retroactive, and entitle such discharged person to pay * * *. The commission, upon such investigation, in lieu of affirming the removal or discharge, may modify the order of removal * * *.

"All investigations made by the commission pursuant to the provisions of this section shall be by public hearing, after reasonable notice to the accused of the time and place of such hearing, at which hearing the accused shall be afforded an opportunity of appearing in person and by counsel * * *."

September 18, 1938, the plaintiff arrested one Stallings and thereupon an altercation took place between the two. At that time the defendant was absent from the city, but upon his return made an investigation and on September 26, 1938, by the order aforementioned, discharged the plaintiff. The order was addressed to the latter and over the defendant's signature stated: "You are hereby discharged from the police

department of Salem for the following reasons: That on the night of September 18, 1938, your conduct showed incompetence and discourtesy in your treatment of the public, as well as mental unfitness for the position of police officer as was shown by the * * *." A copy of the order was filed with the city's civil service commission. The letter of dismissal was not preceded by any notice to the plaintiff nor by a trial.

Within ten days of the time the plaintiff received the order of dismissal he filed with the commission a written demand for an investigation. December 12, 1938, the commission, in a public trial, investigated the merits of the charges. The plaintiff was present, was represented by an attorney, and was afforded an opportunity to fully present his defense. He makes no contention that any testimony which he offered was excluded or that any improper evidence was received. After the commission had considered the matter it entered an order which sustained the plaintiff's dismissal from the city's employ.

In his brief the plaintiff states his contention as follows:

"His position is that he has violated no provision of this charter amendment, that, in fact, the charges preferred against him do not really charge a violation of the charter amendment, that the proceedings against him were political, that in the first instance the only person who could remove him was not the civil service commission, but the chief himself, and by virtue of the fact that the charter amendment provides he cannot be removed except for cause, this necessarily implies he must have a hearing and that there must be a determination by the one who does the removing, not someone else, as to whether or not the cause defined in the charter amendment existed. He contends, and it is so found, that he was never given such a hearing,

that he attempted to take advantage of a hearing before the commission but that the commission was prejudiced and that he did not have a fair hearing and that, further, under the charter amendment, the only thing the commission could do under any circumstances was to pass upon the question of whether he had been removed for political or religious reasons or in good faith for cause, or, in other words, that the commission's trial did not constitute a trial de novo as to the merits of the question involved, but was limited as provided by the charter.''

The plaintiff's brief is almost entirely confined to an argument that since § 92-21 of the Salem charter states that no employee in the classified civil service "shall be removed or discharged except for cause," it is essential to a valid discharge that the accused employee receive notice and a trial before his removal. The plaintiff argues that this trial must occur before the superior—not before the commission.

The plaintiff stresses the importance of *Nelson v. Baker*, 112 Or. 79, 227 P. 301, 228 P. 916; and the defendant deems *Lechleidner v. Carson*, 156 Or. 636, 68 P. (2d) 482, determinative of the issues involved in this case.

In the first of those two cases the facts were: Nelson, who for more than six years had been a member of the Portland police department, was notified in writing by the chief of that department that because of incompetency he was discharged. Section 316 of the Portland charter declared:

"No member of the Bureau of Police, who has served faithfully and efficiently for six years continuously, shall be removed or discharged without first having a trial or hearing, and not then except for cause upon written charges, of which one copy shall have been served upon him * * *.''

Before the attempted dismissal Nelson was given neither a copy of any written charges nor a trial. The decision, which held that the attempted discharge was unauthorized by the city's charter and therefore invalid, said concerning the charter provision above quoted that it was "a part of the amendment relating to the Police Pension Fund. Its framers appreciated the necessity of safeguarding the tenure of office of a member of the Bureau of Police who had served six years, and who was required to contribute to the pension fund." The decision commented upon the fact that the order which attempted to dismiss Nelson likewise named for dismissal six other members of the department, but those six men, according to the decision, had been members of the department for less than six years. Concerning them the decision states: "Their case did not come within the provisions of § 316 of the charter." Section 108 of the charter, according to the opinion under review, authorized the discharge of municipal employees "without any trial or hearing" but granted them the right to an investigation of their dismissal by the city's civil service board, confined, however, "to the determination of the question of whether such removal or discharge was or was not for political or religious reasons or was or was not made in good faith for the purpose of improving the public service." The decision, referring first to the plaintiff and then to these other six men, said: "His standing differed from that of the other officers named in the same notice, who could be discharged without written charge or a hearing."

In *Lechleidner v. Carson,* supra, the plaintiff, like Nelson in the case just reviewed, had been for six years a member of the Portland police department when he

received notice of his dismissal. However, before his receipt of that order § 316 of the charter had been repealed and § 108 had been amended so as to provide that no employee in the classified civil service of the city ''shall be removed or discharged except for cause, a written statement of which in general terms shall be served upon him and a duplicate filed with the board.'' It further required that any discharged employee should be afforded an investigation of his dismissal by the civil service board in the event he made a demand therefor, but that the investigation should be limited to the question of whether the removal was made for political or religious reasons and not in good faith for the betterment of the service. Lechleidner's superior officer had made written charges against him and an investigating committee, after considering the charges, had recommended his dismissal by the chief of the department. The dismissal was made. After this had been done Lechleidner demanded an investigation by the civil service board. The decision states:

''Whether he had prior thereto been served with a copy of the charges and notified of the hearing before the discipline committee, the record is silent,'' but found that before Lechleidner made a demand for an investigation by the board he had received a copy of the charges. The board made an investigation during the course of which Lechleidner was present, was represented by counsel and was afforded a full opportunity to present his defense. The opinion, referring to the charter provision above quoted, says:

''Under these provisions, the plaintiff could not be removed except for cause and upon written charges served upon him and a duplicate thereof filed with the civil service board, and a hearing had thereon and an opportunity afforded him to defend.''

It held that the procedure which was followed and which we have described in the preceding sentences complied with those requirements. It affirmed the order of dismissal. Thus, § 108 which denied to superiors the right to make dismissals except for "cause, a written statement of which in general terms shall be served upon" the employee, was not construed to mean that a trial of the cause must precede the dismissal, as our present plaintiff argues, but its requirements were held to be satisfied by a trial which followed the dismissal; provided the charter, as in the present instance, deemed tentative a dismissal while the hearing was pending. In that case, as in the present, a trial—or investigation, to employ the word of the charters—was available only if a timely demand for one was made by the employee. To the same effect as the Nelson and Lechleidner decisions, see *Moulton v. Logan*, 157 Or. 406, 72 P. (2d) 64.

■■ Those decisions employed no principles of law of an unfamiliar nature. They recognized that here in America a public office is not deemed created for the benefit of the individual who for the time being occupies it. It is created for the benefit of the public, and the incumbent possesses only such rights to it as the laws of tenure yield to him. The laws of tenure which give him a definite term or require his trial before his removal are enacted to insure competent, faithful service to the public. The benefit which they confer upon the official is incidental. Every office, except those created by the legislature, is wholly within its control and the incumbent occupies it with knowledge of that fact. Those are the principles of law, apart from the rules governing the construction of public enactments, which were employed in those two cases.

 A very large number of decisions which passed upon issues similar to the one in the present, the Nelson and the Lechleidner cases are reviewed and classified in the annotation which appears in 99 A. L. R. 336-405. We have examined many of the decisions there reviewed. The annotator states:

"The circumstance that an officer can only be removed 'for cause' ordinarily gives rise to a strong inference that some sort of a hearing must be accorded him and that he is entitled to reasonable notice thereof."

In the present instance it is clear that the plaintiff, as well as all other employees of the city of Salem in its classified civil service, could not be removed from their employment except for cause. Section 92-21 expressly so states, and § 92-20 enumerates the grounds for discharge. Any one of those grounds constitutes sufficient cause for a dismissal. Three are named in the order of dismissal signed by the defendant, September 26, 1938. Section 92-21 requires that a discharge must be made by a written accusation, and further that the accusation must be tried by the city's civil service commission, in the event that an accused employee requests an investigation. Thus, it provides that any person "so removed or discharged," that is, by the written accusation of the appointing authority, a citizen or taxpayer, may within ten days demand an investigation by the commission. Should the employee fail to demand an investigation, he is by necessary inference deemed to have acquiesced in his dismissal and thereby the latter becomes complete. But if he files a written demand for an investigation, the following, according to § 92-21, becomes the subject-matter of the investigation: (1) The cause stated in

the written accusation; (2) the good faith of the superior who made the dismissal; and (3) any claim that political or religious reasons prompted the removal. Unless the removal was for a cause named in the written accusation and enumerated in § 92-20 of the charter, it cannot suffice. Again, if bad faith, political or religious reasons prompted the removal, the latter cannot be sustained by the commission. Thus, the investigation by the commission is broader than a mere ascertainment of the existence or nonexistence of cause. Its purpose is to protect from dismissal a faithful employee who lacks support by a competent, courageous superior. Whenever a demand for an investigation is filed, the removal, in the meantime, is tentative as is evident from the provisions of § 92-21 which authorize the board to reinstate employees wrongfully dismissed and to render their reinstatement "retroactive and entitle such discharged person to pay or compensation from the time of such removal."

Such being the procedure outlined in the Salem charter, we know of nothing in it which is out of harmony with anything said or held in the Nelson and Lechleidner decisions. Nor does any decision cited by the plaintiff or reviewed in the above-mentioned annotation indicate that that procedure is invalid. *Coleman v. Glenn*, 103 Ga. 458, 30 S. E. 297, 68 Am. St. Rep. 108, which the plaintiff says "hits the nail on the head," and other like decisions cited by him, in our opinion, employed no principles of law dissimilar to those stated above. In the Coleman case a judge of the superior court of Tattnall county, upon the recommendation of the grand jury of that county, removed from office the board of education of Tattnall county. He did so without notice to the membership of the board and

without having given them an opportunity to be heard. A Georgia statute provided:

"Any member or members of a county board of education shall be removable by the judge of the superior court of the county, on the address of two-thirds of the grand jury, for inefficiency, incapacity, general neglect of duty or malfeasance or corruption in office." Concerning the statute, the court said:

"Neither the act referred to nor the code makes any provision whatever for any notice to these officers, or for any hearing of charges against them as a condition precedent to their removal from office."

Under a Georgia statute members of boards of education were elected for fixed terms and received salaries. In holding that, since the statute contained provision for neither notice nor trial before removal, it was unconstitutional, the court said:

"It may, therefore, be considered as settled beyond all doubt or peradventure that a public officer who has under the law a fixed term of office, and who is removable only for definite and specified causes, cannot be removed without notice and a hearing on the charge or charges preferred against him, with an opportunity to make defense."

■ As indicated above, the Salem charter rendered removal impossible unless it was preceded by a written accusation, service of a copy of it upon the accused employee, and a trial of the charges before the municipal civil service commission for the purpose of ascertaining whether the removal was for cause or was made in bad faith, for religious, political or other reasons. The above being true, it is our belief that the procedure outlined in the Salem charter for the removal of an employee is valid. Since that procedure was followed in the plaintiff's case, no right which he possessed was violated.

■ We have not overlooked the plaintiff's contention that the civil service commission "was prejudiced and that he (plaintiff) did not have a fair hearing." The plaintiff's brief says but very little in support of this contention. The charge of prejudice is apparently based upon the fact that one of the members of the civil service commission, A. H. Moore, was summoned to the police station shortly after the altercation had occurred where he saw Stallings, and the additional fact that Moore's son-in-law was a witness against the plaintiff in the investigation conducted by the civil service commission. Mr. Moore swore that he did not talk to Stallings, but, believing from the situation as it presented itself and from the statements made by two or three onlookers, that it should have the attention of the mayor, telephoned to that official. He swore that he telephoned to the mayor and not to the chief of police, because the latter was at that time absent from the city. Mr. Moore testified in the trial of this cause in the circuit court. We examined his testimony but found nothing which suggests an inference that he was prejudiced against the plaintiff.

■ The plaintiff also contends that the commission limited its inquiry to an ascertainment of whether his discharge was made for political reasons and in bad faith. We observe from the transcript of testimony before us that Mr. Brazier Small, a member of the Oregon bar, was a member of the city's civil service commission, and that he testified in the circuit court that the board, in investigating the charge against the plaintiff, was convinced "that we first had to say whether or not the chief made this discharge for political or religious reasons and then if he had not, whether it was made in good faith and for cause." He further

testified that after the commission had received a copy of the notice of the plaintiff's discharge it selected a day for the hearing and that "Officer Winslow was represented by counsel, and I think very ably so, and permitted to call all the witnesses they desired on their behalf. A full hearing was had, it was reported by a reporter and that report is available for anybody who desires to see." The decision of the commission, which was unanimous, states:

"Following the presentation of the evidence the Civil Service Commission retired and considered the matter, and after deliberating for some time they returned and the Chairman announced that the Commission was making the following order: That the appeal of Mr. Frank Winslow be denied and that the order of dismissal by Mr. Frank A. Minto, Chief of Police of the Salem Police Department be upheld."

It is apparent from the above that the hearing was conducted in the manner which the above paragraphs deem proper. We know of nothing which indicates that the commission, which was composed of three responsible residents of Salem, was prompted by any prejudice.

■ In this proceeding we are without power to review the findings of the commission. This is not an appeal from their order; in fact, the commissioners are not even parties to this action. We have accepted, as we are required to do, their findings as conclusive upon us.

■ It follows from the above that, since the proceedings attendant upon the plaintiff's discharge were conducted in entire compliance with the charter of the city, the plaintiff's dismissal was not invalid. Therefore, the judgment of the circuit court which orders his reinstatement is erroneous. That judgment is,

therefore, reversed. The writ that was issued cannot be sustained; it must be quashed.

RAND, C. J., and LUSK and BAILEY, JJ., concur.

KELLY, BELT and BEAN, JJ., did not participate in this decision.