Argued December 1, reversed December 30, 1960, petition
for rehearing denied February 7, 1961

## CITY OF PORTLAND *v.* GARNER ET AL

358 P. 2d 495

*Richard A. Braman,* Portland, argued the cause for appellant. With him on the brief were Alexander G. Brown and Malcolm J. Montague, Portland.

*Harvey J. Osborn,* Portland, argued the cause and filed the brief for respondent George L. Beil.

Before McAllister, Chief Justice, and Rossman, Sloan, O'Connell and Howell, Justices.

## ROSSMAN, J.

This is an appeal by the petitioner, City of Portland, from a judgment entered by the circuit court which quashed a writ of review obtained by the city. The writ of review sought to set aside an order of the Portland Civil Service Board which ruled that the defendant George L. Beil remained a fireman in the Bureau of Fire, Department of Public Affairs of the City of Portland notwithstanding the fact that on November 28, 1958, the Honorable Stanley W. Earl, city commissioner in charge of the Bureau of Fire, notified Beil in writing that an investigation disclosed that he was no longer a resident of Portland as required by Section 2-511 of Portland's charter, and that, therefore, he (Earl) was compelled (1) to rule that Beil had abandoned his position as a fireman and (2) to remove his name from the list of city employes. The city contends that the Civil Service Board in disregarding Earl's order acted outside of its charter jurisdiction. The circuit court (1) affirmed the order in favor of Beil which the board had made and (2) quashed the writ of review.

Section 4-112 of the Portland charter provides:

> "No employe in the classified civil service who shall have been permanently appointed under the provisions of this chapter shall be removed or discharged * * * except for cause, a written statement of which in general terms shall be served upon him and a duplicate filed with the board. Such removal or discharge may be made without any trial or hearing. In the bureau of police removal, discharge or demotion may be made only after a

hearing before the mayor, chief of police, or a discipline committee of superior officers * * *. Any employe so removed or demoted may within ten days from his removal or demotion file with the board a written demand for investigation. If such demand shall allege, or, if it shall otherwise appear to the board that the discharge or removal, and in the case of the bureau of police, demotion, was for political or religious reasons, or was not in good faith, for the purpose of improving the public service, the matter shall forthwith be investigated by or before the board * * *. The investigation shall be confined solely to the determination of the question of whether such removal or discharge, or, in the case of the bureau of police, demotion, was or was not for political or religious reasons, or was or was not made in good faith for the purpose of improving the public service. The burden of proof shall be upon the discharged employe. * * *"

Section 2-511 of the charter of Portland reads:

"Except as hereinafter provided, all officers and employes receiving salary or wages from this city shall be residents of the city of Portland at the time of their election or employment, and continuously during the period of such employment. Any employe coming under the provisions of civil service who is not a resident of the city at the time of employment shall become a resident of the city by the end of his or her probationary period. Any officer or employe who is not a resident of the city on the effective date of this section shall within ten years from such effective date establish residence and become a bona fide resident of the city. * * * The provisions of this section shall not apply to consulting employes employed under authority of Section 2-504 of this charter, or to unpaid members of city advisory boards, commissions or committees. The council may by ordinance waive the provisions of this section in the future employment of persons to technical, professional or scientific positions, provided * * *. Violation of the

provisions of this section shall be deemed cause for removal or discharge of any officer or employe of the city."

Beil became a fireman in the Portland Fire Department November 25, 1946. In 1953, after fighting a fire, he was bothered with asthma and thereafter was granted a sick leave for three days. In October 1957, as a result of an application made by him, he was granted a leave of absence for nine months without pay. The order recited: "Mr. Beil is suffering from bronchial asthma." Later the leave of absence was extended, upon Beil's request, to October 24, 1958, thereby making it one year in length. In October of 1957 Beil and his family moved to southern California. We observe that upon the application form of Mr. Beil his physician, Dr. Matteri, typed and signed this statement:

"This patient moved to California on his own * * *. I feel that this man with an occupation of fighting fires, would definitely aggravate his asthma due to the exertion and inhaling of smoke and other irritants."

The file that was certified to the circuit court by the Civil Service Board contains a copy of a letter written by Dr. John R. Montague, medical adviser to the Civil Service Board, which states:

"In view of the history this man's asthma cannot be considered a service-connected disability. Smoke exposure could undoubtedly precipitate an attack, and this man has been advised by Dr. Matteri that he should not follow fire fighting as a profession, with which advice I agree."

The letter also states, "As soon as he returns to Portland the asthma worsens."

When Beil obtained his leave of absence from the

city council he, his wife and two children went to a municipality in Orange County, California, known as Garden Grove. One of his children was five years of age and the other six. A vacant lot in Portland which was the sole realty which he had owned was sold by him upon his departure for California. He had lived in a rented house in Portland, and upon going to California took with him its furnishings. In Garden Grove he and his family occupied a rented house. Before going to Garden Grove he had negotiated for the acquisition of a garbage collection business there known as the Garden Grove Disposal Company. Upon reaching Garden Grove he completed the purchase. The older of his two daughters registered in the public schools in Garden Grove. August 30, 1958, Beil registered with the California election officials so that he could vote and, in the November election cast a ballot. Constitution of California, Article II, Section 1, provides:

> "Every native citizen of the United States * * * who shall have been a resident of the state one year next preceding the day of the election * * * shall be entitled to vote * * *."

West's Annotated California Election Codes, § 230, prescribes the form of affidavit of registration which must be employed in registering. It requires the applicant to state under oath that he is a "resident of the State one year."

 October 1, 1958, Beil, while in California, sent an application to the Fire and Police Disability and Retirement Fund Board for service-connected disability benefits. The application was denied. It will be recalled that Dr. Montague had advised the board that Beil's asthmatic condition was not the result of fire fighting. October 21, 1958, Beil applied from his abode

in California for a non-service-connected disability pension. The printed application upon which he made the petition had these printed words: "As long as I remain a resident of Oregon." Beil struck out those words. November 7, 1958, he requested the Fire and Police Disability and Retirement Fund Board to waive the city's requirement for an Oregon residence. A letter signed by Beil which accompanied the application stated:

> "I can not at the present time continue in the occupation of a fire fighter. The Board Physician, Dr. Montague, concurring with my personal physician that there might be something in the climatic condition of Portland that does not agree with me. This past year in California, I have felt somewhat improved, although the condition persists."

The application for the disability pension was later withdrawn. October 23, 1958, Beil came to Portland and asked the city to place him on sick leave following the termination of his leave of absence which was destined to expire the next day, that is, October 24, 1958. In pressing his application for sick leave Beil met and conferred with officials of the fire department. Those with whom he conferred recommended that he use his accrued vacation period first before he ask for anything in the nature of sick leave. This recommendation was adopted but nevertheless Beil maintained his petition that at the termination of the vacation period he be placed on sick leave. The Disability Board notified Beil, "All sick leave due you must be used prior to receiving non-service benefits." In order that an employee may be granted sick leave it is necessary that he present a physician's certificate. The grant of sick benefits falls exclusively within the province of the Bureau of Health. Notwithstanding their lack of power to grant sick benefits, the battalion

chiefs with whom Beil conferred gave him assurance that at the end of the extension of his leave of absence he would be placed on sick leave. He thereupon. returned to California. For the purpose of clarification we explain that upon the expiration of Beil's leave of absence he was placed on vacation and at the expiration of that period, November 15, the Fire Bureau listed him on sick leave.

Firemen who are on sick leave receive financial grants. When one of the battalion chiefs observed the California address which appeared upon one of Beil's applications and to which we have referred he called it to the attention of Mr. Earl, aforementioned, who was the city commissioner in charge of the Bureau of Fire. Mr. Earl thereupon ordered an investigation and on November 28, 1958, wrote to Mr. Beil:

> "As commissioner in charge of the Bureau of Fire, I am informed that you have requested sick leave and payment from the city therefor from and after November 15, 1958. As you are no doubt aware, the provisions of Section 2-511 of the city charter of Portland require all officers and employes receiving salary or wages from the city to be residents of the city of Portland."

The letter then commented on the leaves of absence that had been granted to Mr. Beil and continued:

> "I understand, you moved to Garden Grove, California, where you are presently living and entered into business in that city, as owner of the Garden Grove Disposal Company * * *. It is of course entirely proper for an employe on vacation to be out of the city. However, leaves of absence for sickness with full pay during the period equal to the credits therefor previously earned, stands on a different footing and residence is absolutely required under the charter."

Mr. Earl's letter next mentioned a visit that had been made to the last address given by Beil as his Portland place of residence and stated that the occupant of those premises declared that she knew nothing of the Beil family. The letter added that inquiry of the registrar of elections of Multnomah County disclosed that Mr. Beil had not voted in either the primary or general election since he left Portland. The letter concluded as follows:

> "From the foregoing, I must conclude that you are not at the present time a resident of the city of Portland, and that your absence from the city is more than temporary. Therefore, noncompliance with Section 2-511 of the city charter relating to residence requirements constitutes abandonment of your position as fire fighter with the Bureau of Fire of this city, and I am forced to reject and disapprove any payment whatever to you for sick leave."

Following his receipt of the commissioner's letter from which we just quoted, Beil availed himself of the privilege afforded by Section 4-112 of the city charter and applied for a hearing before the Civil Service Board. The hearing was held January 6, 1959. In its course the facts were developed that we have mentioned. In January of 1959 Beil's wife and children were still in California. During the course of the hearing Beil stayed with his mother in Portland. He testified that his disposal business had been for sale for three months, but conceded that about a month after he had listed his business for sale he submitted to the pension board the request that we have mentioned for a waiver of the city's requirement that he must be a Portland resident.

A previous paragraph of this opinion quotes the pertinent part of Section 4-112.

At the conculsion of its hearing the Civil Service Board found:

1. Beil had not intended to abandon his employment with the city;

2. Beil had not done anything contrary to his superiors' advice in taking vacation and sick leave;

3. Before writing his letter of November 28, 1958, Commissioner Earl had not inquired of Beil concerning his intentions.

From the above facts the board decided that the dismissal was not made in good faith and ordered Beil's reinstatement. Two weeks later Beil voluntarily withdrew his request for disability benefits.

There is no contention that Mr. Beil's dismissal was prompted by political or religious reasons, and hence, we need not give any attention to the provisions of Section 4-112 of the charter which condemn dismissals that were prompted by such unworthy motives. The question remains, however, as to whether or not the evidence establishes that the dismissal was made in bad faith. We deem it necessary to inquire whether:

1. A member of the Portland Fire Bureau is entitled to notice and a hearing before he can be discharged;

2. The Portland Civil Service Board has power to reinstate a city employee if it finds that the city official who discharged him made an erroneous finding of fact concerning the cause of the discharge;

3. Beil established that his discharge was made for any purpose other than the improvement of the public service.

■ *Winslow v. Minto,* 164 Or 495, 102 P2d 919, held that when the provisions of a charter or an ordinance provide that an employee may not be discharged except "for cause," a strong inference is warranted that he

must be given notice of the cause and an opportunity to defend. The term "for cause" implies that the decision of the discharging officer must be "quasi judicial" rather than arbitrary, so the Winslow decision held. But the Portland charter expressly repels the inference which would otherwise be drawn from the words "for cause." It says, as we have seen, that "such removal or discharge may be made without any trial or hearing." Nothing of like kind appeared in the Salem charter that was construed in the Winslow case. We do not believe that the commissioner was required to give Beil notice and a hearing prior to his removal.

■ The Civil Service Board reinstated Beil because (1) he had not disobeyed his superiors; (2) he had not intended to abandon his employment; and (3) Commissioner Earl had not consulted him before discharging him. The board missed the point that Beil could not remain a Portland employee while not a resident of Portland. Commissioner Earl did not find that Beil had intended to abandon his job. He found that Beil did not intend to return to Portland and, therefore, could not have sick pay. The board found that Beil intended to keep his job in order to collect sick pay. It does not follow that he also intended to return to Portland. The finding by the commissioner that Beil no longer had a Portland residence is supported by ample evidence. It will be recalled that only three weeks before the dismissal Beil made an application for waiver of residential requirements and stated, "I can not at the present time continue in the occupation of a fire fighter." His application then commented upon the observation that had been made to him by Doctors Montague and Matteri that "there might be something in the climatic condition of Portland that does not agree with me."

But even if intent to keep the job is considered the same as intent to remain a resident, may the board reinstate an employee because the commissioner made an erroneous finding of fact. *Winslow v. Minto*, supra, is again in point. The Salem charter provision read:

"The investigation shall be confined to the determination of the question of whether such removal or discharge was or was not made for political or religious reasons and was or was not made in good faith for cause."

Under that provision the board could properly investigate whether cause existed. If the cause was nonresidence and the board found residence in fact, the Salem employee could be reinstated.

■ The Portland charter, Section 4-112, reads:

"* * * The investigation shall be confined solely to the determination of the question of whether such removal or discharge * * * was or was not for political or religious reasons, or was or was not made in good faith for the purpose of improving the public service. The burden of proof shall be upon the discharged employe."

Under this provision the Civil Service Board should not consider whether cause existed in fact except as it may show a purpose other than improvement of the public service. The commissioner's letter to Beil was based upon evidence of nonresidence. His stated motive for the discharge should have been accepted by the board until disproven.

We, therefore, next inquire as to whether or not Beil proved that he was discharged for some purpose other than improvement of the public service.

■ The only matter that Beil offered to sustain his burden of proving an ulterior motive was his own allegation that Commissioner Earl discharged him to

prejudice his application for benefits. On a writ of review, "any evidence whatever" will sustain the findings of fact. *Cole v. Portland*, 96 Or 645, at p 649, 190 P 720. The record of the Civil Service Board hearing discloses nothing concerning Earl's motive except that he did not know Beil and was not concerned with the affairs of the Disability Board. Beil did not attempt to show that his discharge would in fact prejudice his application for benefits.

■ The findings of fact made by the Civil Service Board seem to be irrelevant to the issue of the commissioner's purpose. The board's conclusion of law, that the discharge had been made in bad faith, is not supported by any evidence whatever given at the hearing. The board had jurisdiction to determine the issue of good faith only. Neither the evidence heard by the board nor its findings of fact support the conclusion of bad faith. The order to reinstate Beil was, therefore, an irregular proceeding which could be reached by writ of review. *Bechtold v. Wilson*, 182 Or 360, 377, 186 P2d 525, 187 P2d 675; *Safeway Stores v. State Board of Agriculture*, 198 Or 43, 53, 255 P2d 564.

■ Beil's case rests on the view that an employee in civil service has a vested right to his job and can not be discharged without proof of wrongdoing on his part. The Civil Service Board seems to have adopted this belief also. There may be civil service systems in which this is true. Portland's civil servants are not given such rights by their city's charter. There is no other source of rights for employees. Without the limited protection of the charter they may be discharged at will. *Winslow v. Minto*, supra.

Defendant Beil proved to the Civil Service Board that he did not intend to abandon his job and that he had not disobeyed his superiors; but those facts are

not enough to support the board's order to reinstate him. The board exceeded its jurisdiction by finding bad faith upon the part of Commissioner Earl without any evidence that could support such a finding. The circuit court committed error by sustaining an order not based on facts.

Reversed.