YOUNGER et al,
*Petitioners,*

*v.*

CITY OF PORTLAND et al,
*Respondents.*

(LUBA 86-046; CA A43194)

739 P2d 50

Mark J. Greenfield, Portland, argued the cause for petitioners. With him on the brief were Edward J. Sullivan, and Mitchell, Lang & Smith, Portland.

Kathryn Beaumont Imperati, Chief Deputy City Attorney, Portland, argued the cause for respondent City of Portland. With her on the brief was Adrianne Brockman, Deputy City Attorney, Portland.

Susan M. Quick, Portland, argued the cause for respondents Fred Meyer Real Estate Properties, Ltd., and the Hyster Company. With her on the brief was Ball, Janik & Novack, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

Petitioners seek review of LUBA's affirmance of the City of Portland's decision to amend its comprehensive plan and to change the zoning classification of a 17.4-acre parcel in northeast Portland from heavy and general manufacturing to light manufacturing. The city's actions were sought by respondents Fred Meyer Real Estate Properties (Fred Meyer) and the Hyster Company to enable Fred Meyer to develop a shopping center and to conduct certain other uses on the property. Petitioners advance two principal reasons for reversing the city's and LUBA's decisions: The city failed to give appropriate consideration to and make necessary findings concerning the potential impact of permitted uses in the new zone other than the specific uses contemplated by the Fred Meyer application; and LUBA wrongly construed and applied the statutory standard for reviewing the city's findings.

Petitioners argue that, in acting on a proposal to rezone land, a planning jurisdiction must consider the potential impact of all uses which are permitted in the proposed zone rather than limit its concern to the specific use that the applicant for the change intends to conduct on the rezoned property. Petitioners maintain that neither Fred Meyer, nor future owners or users of the parcel, are limited to the shopping center and other uses which Fred Meyer now intends to make of the property, but are entitled to pursue any of the more than 100 uses which are permitted in the zone. LUBA agreed with petitioners that the city may not "simply focus on the impact of the Fred Meyer proposal and not the potential impact caused by the rezoning should Fred Meyer not complete its project and other uses move on to the property."[1] Nevertheless, LUBA concluded that the conditions which the city placed on the zone change, which it said were "tailored to the Fred Meyer store," together with LUBA's perception that "it is difficult to conceive of a more intensive use than a shopping center," provided a sufficient basis for affirming the

---

[1] Petitioners and LUBA perceive this issue in somewhat different ways. LUBA's opinion *appears* to formulate a requirement that planning jurisdictions must consider the impacts only of permitted uses which are more intensive than the proposed ones, while petitioners' argument would apparently require that *all* permitted uses in the new zone, and the impacts of those uses, must be addressed as part of a rezoning decision.

rezoning decision, notwithstanding the city's failure to consider other possible uses under the proposed zoning classification.

Petitioners disagree with LUBA's conclusions. They contend that the city's conditions are consistent with other uses as well as the shopping center and, more importantly, that LUBA simply hypothesized that other permitted uses could not be as intensive as the shopping center use, in the absence of any consideration or findings by the city to that effect. The city and the proponents argue that LUBA's order should be affirmed both on the basis of LUBA's reasons for sustaining the city's decision and because LUBA was not correct in concluding that city consideration of uses other than Fred Meyer's proposed use was required. We affirm LUBA's order.

■■ Comprehensive plan amendments must be made in conformance with the requirements of applicable statewide planning goals, statutes and local plans and ordinances. *Anderson v. Peden,* 284 Or 313, 587 P2d 59 (1978). Thus, it is necessary to look to these sources to determine if, as petitioners contend, the impacts of possible permitted uses must be considered in making this amendment and zone change. There is nothing in state law, the city's plan or ordinances or general principles of land use law which supports petitioners' contention.

In this case, the pertinent requirements for the requested plan and zone change are found in policies 10.4 and 10.8 in the city's comprehensive plan. Policy 10.4 provides, in relevant part, that an applicant must show that the requested change is

"(1)   consistent with and supportive of the appropriate comprehensive plan goals and policies,

"(2)   compatible with the land use pattern established by the comprehensive plan,

"(3)   in the public interest to grant the petition; the greater the departure from the comprehensive plan map designation, the greater the burden of the applicant, and

"(4)   that the public interest is best served by granting the petition at this time and at the requested locations."

Policy 10.8 provides that the city council must make two findings to approve a zone change:

"1.  The proposed rezoning must be to the maximum comprehensive plan map designation * * *.

"2.  It must be found that services adequate to support the proposed industrial or commercial use or the maximum residential density allowed by the proposed rezoning are presently available or can be reasonably made available (consistent with the comprehensive plan public facilities policies) by certificate of occupancy or completion from the Bureau of Buildings."

As LUBA concluded, Policy 10.8 does not require that all permitted uses in a zone be considered, but rather the policy only requires that the city find that necessary services will support the particular use proposed. However, LUBA concluded that Policy 10.4 requires that other permitted uses in the new zone be considered. LUBA reasoned that nothing in the policy suggests that "changes" refers to a specific project, but that it refers to the change in use designation.

The city generally interprets Policy 10.4 to mean that the "changes" to be considered will vary according to the nature of the specific change sought and the specificity and limitations on the proposed project. We agree with the city's application of the policy in this case. Under circumstances where the proposed use is not among the more intensive ones in the zone or if there is little assurance that the proponent will carry out its intention to use the property in the proposed manner or for a comparably intensive use, LUBA's conclusion that a rezoning decision must reflect consideration of more intensive permitted uses might well be correct. However, in this case, it would be an empty exercise to require the city to consider all alternative permitted uses.

The city's decision was to downzone the parcel from heavy to light manufacturing, that is, to reduce the general level of intensity of the use to which the property can be put. Most of the uses which are permitted under the new classification were also permitted under the former zoning. There are compelling reasons to believe that, in the foreseeable future, the property will be put to the proposed use and to no other uses which are nominally permitted in the area under the new zoning classification. The conditions of approval limit the

intensity of use to one comparable with the particular Fred Meyer project.[2] In addition, Fred Meyer must submit the project plan for review under the city's design review process before obtaining a building permit as well as review under the city's Superblock Development Ordinance, which requires review of the project as a single planned project.

■     Petitioners next contend that LUBA erred by affirming certain city findings, relating mainly to the compatibility of the proposed center with comprehensive plan policies aimed at preserving existing businesses and commercial areas. Petitioners argue that the city did not apply the proper standard in its review of whether there was sufficient evidence to support the findings.

ORS 197.835(8)(a)(C) empowers LUBA to reverse or remand local government findings only if they are "not supported by substantial evidence in the whole record." The definition of the standard of LUBA's factual review has remained materially unchanged since the legislation creating LUBA was enacted. *See* Or Laws 1979, ch 772, §§ 4(7), 5(4)(a)(C). We held in *Home Builders v. Metro Service Dist.,* 54 Or App 60, 633 P2d 1320 (1981), that, under the LUBA statutory review provisions,[3] the reviewing body may not "reweigh the evidence," but must confine its inquiry to "whether the record contains substantial evidence to support the decision"; that " '[s]ubstantial evidence consists of evidence which a reasonable mind could accept as adequate to support a conclusion,' " 54 Or App at 62 (quoting *Braidwood v. City of Portland,* 24 Or App 477, 480, 546 P2d 777 (1980)); and that,

"where there is conflicting evidence based upon differing

---

[2] The conditions require Fred Meyer to: (1) construct and pay for extensive traffic improvements; (2) obtain an indirect source permit; (3) implement an employe ride share program; (4) attempt to recruit and hire employes from the surrounding area; (5) limit its operating hours and truck delivery routes and hours; (6) provide a public park and plaza on the site; and (7) seek and obtain any street vacations that may be necessary. Fred Meyer estimated that the cost of implementing the conditions will be approximately one million dollars.

[3] Our discussion in *Home Builders* was directed to the provision governing our review of LUBA's findings, Or Laws 1979, ch 772, § 6a(8), as well as the provisions relating to LUBA's review of local government findings. The provisions relating to LUBA's review and ours were identical in substance, and the current statute governing our review of LUBA's findings, ORS 197.850(9)(c), sets forth the same standard of review for evidentiary sufficiency as the standard 197.835(8)(a)(C) establishes for LUBA's review of local government decisions.

data, but any of the data is such that a reasonable person might accept it, a conclusion based upon a choice of any of that data is, by definition, supported by substantial evidence." 54 Or App at 63.

*See also Valley & Siletz Railroad v. Laudahl,* 56 Or App 487, 642 P2d 337 (1982), *rev dismissed* 296 Or 779 (1984).

Petitioners contend that that test should be revised in accordance with the concurring opinion of Judge Gillette in *Brown v. AFSD,* 75 Or App 98, 102-104, 705 P2d 336 (1985), *rev den* 300 Or 477 (1986), in which he interpreted ORS 183.482(8)(c) as adopting the federal substantial evidence test, which provides that, when there is evidence to support a finding but there is countervailing evidence elsewhere in the record, the countervailing evidence may detract from the substantiality of the supporting evidence and that:

"Not all evidence is 'substantial'; if it were, no test would be required. It follows that some minimal weighing or balancing is involved in testing evidence for substantiality." 75 Or App at 103.

*Brown* was decided *in banc.* No other member of the court joined in Judge Gillette's opinion. The majority opinion applied the long standing Oregon Administrative Procedures Act substantial evidence test, *i.e.*: "any reasonable evidence or such proof as a reasonable mind would employ to support a conclusion."[4]

In any event, in this case we are concerned with ORS 197.835(8)(a)(C), not ORS 183.482(8)(c). As we have noted, our earlier interpretations of ORS 197.835(8)(a)(C) and its predecessors are contrary to the interpretation petitioners urge us to adopt now. Petitioners have not persuaded us that the earlier constructions are incorrect. Moreover, in *Bauder v. Farmers Ins. Co.,* 301 Or 715, 725 P2d 350 (1986), the Supreme

---

[4] ORS 183.482(8)(c) was amended by Or Laws 1985, ch 757, § 2, to provide:

"The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

The 1985 amendment added the second sentence. That amendment did not apply to our review in *Brown v. AFSD, supra.* We have not construed the scope of our factual review under the statute as amended.

Court explained that it adhered to its earlier construction of a statute, in part because that construction

> "has always been subject to legislative change. It has survived five regular legislative sessions after our interpretation was announced. We see no reason to do what the legislature, for whatever reason, has not seen fit to do." 301 Or at 726.

The same principle applies to ORS 197.835(8)(a)(C), which the legislature has not seen fit to change to establish a different standard of review for evidentiary sufficiency than our opinions have enunciated.[5] We hold that LUBA applied the proper standard of review and that the city's findings were supported by substantial evidence.

Affirmed.

---

[5] The *Bauder* principle may apply with even greater force here than it did in *Bauder* itself. The APA substantial evidence review statute was amended in 1985, *see* note 4, *supra,* but the legislature did not amend the LUBA review statute when it enacted the APA amendment.