Argued and submitted January 19, decisions of Court of Appeals and Land Use Board
of Appeals reversed and remanded to Land Use Board of Appeals for reconsideration
March 29, 1988

YOUNGER et al,
*Petitioners on Review,*

*v.*

CITY OF PORTLAND et al,
*Respondents on Review.*

(LUBA 86-046; CA A43194; SC S34287)

752 P2d 262

Mark J. Greenfield, Portland, argued the cause for petitioners on review. With him on the brief were Edward J. Sullivan and Mitchell, Lang & Smith, Portland.

Kathryn Beaumont Imperati, Chief Deputy City Attorney, Portland, argued the cause for respondent on review City of Portland. With her on the briefs was Peter A. Kasting, Deputy City Attorney, Portland.

Susan M. Quick, Washburn & Kemp, San Francisco, California, argued the cause for respondents on review Fred Meyer Real Estate Properties, Ltd. and Hyster Company.

Robert C. Cannon, Marion County Legal Counsel, Salem, filed an *amicus curiae* brief on behalf of Marion County, Oregon.

LENT, J.

Peterson, C. J., concurred and filed an opinion in which Jones, J., joined.

**LENT, J.**

The Land Use Board of Appeals (LUBA) may reverse or remand a local government's land use decision if the decision is "not supported by substantial evidence in the whole record." ORS 197.835(8)(a)(C). The issue is whether LUBA must evaluate the substantiality of evidence supporting a decision by considering the supporting evidence alone or by considering all the evidence in the record, including countervailing evidence. The Court of Appeals held that LUBA's evaluation of substantiality properly considered only supporting evidence. *Younger v. City of Portland,* 86 Or App 211, 216-18, 739 P2d 50 (1987). We hold to the contrary that ORS 197.835(8)(a)(C) requires LUBA to evaluate substantiality on the basis of the entire record. Because we cannot ascertain whether LUBA correctly evaluated the evidence in this case, we reverse and remand to LUBA for reconsideration.

## I.

Respondents Fred Meyer Real Estate Properties, Ltd. (Fred Meyer) and Hyster Company applied to respondent City of Portland for a comprehensive plan[1] amendment and zone changes for a 17.4-acre site in Portland that had been used by Hyster for a manufacturing plant. The site was designated for heavy and general manufacturing in the city's comprehensive plan and zoned accordingly. Respondents sought a plan amendment and zone changes to light manufacturing in order to permit Fred Meyer to build on the site a shopping center and offices, which are permitted uses under that classification. Petitioners, most of whom are residents of areas adjacent to the proposed development, objected to the plan amendment and zone changes on the grounds that the changes would produce traffic increases and adverse effects on neighboring businesses that would violate numerous provisions of the city's comprehensive plan.

Following hearings on respondents' application, a

---

[1] A "comprehensive plan" is

"a generalized, coordinated land use map and policy statement of the governing body of a local government that interrelates all functional and natural systems and activities relating to the use of lands, including, but not limited to, sewer and water systems, transportation systems, educational facilities, recreational facilities, and natural resources and air and water quality management programs."

ORS 197.015(5).

hearings officer for the city denied the application. The Portland City Council, however, after conducting further hearings, approved the application by a three to two vote.

Petitioners appealed to LUBA, contending, *inter alia,* that the city's findings with respect to traffic and economic effects were insufficiently supported by evidence in the record.[2] In particular, petitioners argued that the evidence upon which the city council relied was so undermined by other evidence in the record that the city council's decision could not be said to be supported by "substantial evidence in the whole record."

LUBA rejected petitioners' arguments and affirmed.

"We do not find the evidence presented by the petitioner to be necessarily more 'believable' than that furnished by the applicant. Further, it is not our function to decide which evidence is the more correct. Our review of the evidence suggests that evidence on both sides would support a decision. That is, either the evidence of the petitioner or that of the applicant is sufficient to form the basis for a decision. It is not our place to decide for the city which evidence it should believe. The city has done what it is required to do. It considered the evidence on both sides, weighed it (and in so doing considered its credibility) and made findings. *Braidwood v. City of Portland,* 24 Or App 477, 546 P2d 277 (1976). Under these circumstances, we cannot say that the evidence supporting the city's decision is not substantial evidence. *Home Builders Association of Metropolitan Portland v. Metropolitan Service District,* 54 Or App 60, 633 P2d 1320 (1981)."

*Younger v. City of Portland,* ___ Or LUBA ___ (86-046) (January 30, 1987) (slip op at 8-9).[3]

---

[2] LUBA has "exclusive jurisdiction to review any land use decision of a local government." ORS 197.825(1). A "land use decision" includes a "final decision or determination made by a local government * * * that concerns the adoption, amendment or application of * * * [a] comprehensive plan provision" or a "land use regulation." ORS 197.015(10)(a)(A)(ii), (iii).

[3] The quotation is from a discussion of the city's findings regarding traffic effects. LUBA similarly rejected petitioners' arguments concerning the city's findings regarding effects on area businesses:

"We are not empowered to decide whether Dr. Whitelaw is more correct than the Hobson report and other supporting evidence relied upon by the city. * * * We conclude, therefore, that while there exists believable evidence on both sides of this question, we are unable to find as a matter of law, that the city's evidence is not substantial. That is, we conclude the city's evidence is such that a reasonable

On judicial review, the Court of Appeals affirmed LUBA. The court, relying primarily on its decision in *Home Builders v. Metro Service Dist.,* 54 Or App 60, 633 P2d 1320 (1981), rejected petitioners' argument that LUBA should have evaluated the substantiality of supporting evidence by considering all the evidence in the record.[4] In *Home Builders,* the court had stated, without addressing the meaning of the phrase "in the whole record,"

> "[W]here there is conflicting evidence based upon differing data, but any of the data is such that a reasonable person might accept it, a conclusion based upon a choice of any of that data is, by definition, supported by substantial evidence."

*Id.,* 54 Or App at 63. Because the Legislative Assembly had not acted to change the construction given to LUBA's scope of review by *Home Builders,* the Court of Appeals concluded that LUBA had correctly refused to evaluate the substantiality of supporting evidence in the manner urged by petitioners. *Younger v. City of Portland, supra,* 86 Or App at 217-18.[5]

## II.

ORS 197.835(8)(a)(C) provides:

"[LUBA] shall reverse or remand the land use decision under review if [LUBA] finds:

"(a)    The local government or special district:

---

person would believe it to be sufficient to support a decision. *Christian Retreat Center v. Board of Commissioners of Washington County,* 28 Or App 673, 560 P2d 1100; *rev den* (1977)."

*Younger v. City of Portland,* _____ Or LUBA _____ (86-046) (January 30, 1987) (slip op at 21-22).

[4] Petitioners also challenged at LUBA and the Court of Appeals the city's failure to consider and to make findings on the effects of land uses, other than those contemplated by Fred Meyer, that would be permitted under the proposed plan and zoning classifications. This issue was not raised in the petition for review to this court.

[5] In adhering to its interpretation of LUBA's scope of review in *Home Builders v. Metro Service Dist.,* 54 Or App 60, 633 P2d 1320 (1981), the Court of Appeals cited the opinion of this court in *Bauder v. Farmers Ins. Co.,* 301 Or 715, 725 P2d 350 (1986). In *Bauder,* this court adhered to its previous interpretation of a statute because the Legislative Assembly had not seen fit to make any change. *Id.,* 301 Or at 726. The *stare decisis* rationale of *Bauder* may persuade the Court of Appeals to adhere to its prior interpretations of statutes, but *Bauder* does not require adherence. Interpretations by the Court of Appeals are not binding on this court or on the Court of Appeals, unless the Court of Appeals chooses to be bound by them. Moreover, because finality of interpretation rests with this court, care should be taken in according significance to legislative inaction in the face of statutory interpretations by the Court of Appeals.

"*\* \* \* \* \**

"(C)    Made a decision not supported by substantiaľ evidence in the whole record[.]"

The issue in this case turns on the meaning of the phrase "in the whole record."[6]

ORS 197.835(8)(a)(C) was enacted in 1983, Or Laws 1983, ch 827, § 32a(8)(a)(C), but the provision has a much longer history. The 1983 enactment was taken virtually verbatim from Oregon Laws 1979, chapter 772, section 5(4)(a)(C), which was a part of the act that created LUBA.[7] Persons involved in drafting the 1979 act testified before the Senate Committee on Trade and Economic Development and before the House Committee on the Judiciary that the "substantial evidence" provisions of the act were intended to conform to the "substantial evidence" provision for contested

---

[6] We note that LUBA did not independently interpret its scope of review under ORS 197.835(8)(a)(C). LUBA's interpretation relied on Court of Appeals interpretations. In addition, prior LUBA decisions have not demonstrated the existence of a consistent interpretation of ORS 197.835(8)(a)(C) that might underlie its present decision. From *Panner v. Deschutes Co.,* 14 Or LUBA 1, 6 (1985), and *Sane Orderly Development v. Douglas County Bd of Comm'rs,* 2 Or LUBA 196, 203-06 (1981), one could infer that LUBA evaluated the substantiality of evidence supporting a land use decision in light of countervailing evidence, but the opposite inference can be drawn from *Columbia River Television v. Multnomah Co.,* 14 Or LUBA 179, 183-87 (1986), and *Hinson v. Jackson County,* 1 Or LUBA 24, 28 (1980). For these reasons, the "deference" this court has shown in other contexts to administrative statutory interpretations that are not inconsistent with the policy behind the statute would not be warranted in this case, even were we to conclude that an evaluation of evidentiary sufficiency upon less than the whole record was consistent with the policy behind ORS 197.835(8)(a)(C). *Cf. Springfield Education Assn. v. School Dist.,* 290 Or 217, 227, 621 P2d 547 (1980).

[7] Oregon Laws 1979, chapter 772, contained a "sunset" provision in section 28(1) for sections 1-6a, which necessitated the reenactment of section 5(4)(a)(C) in 1983. Section 5(4)(a)(C) read: "(C) Made a decision *that was* not supported by substantial evidence in the whole record." (Emphasis added.) The italicized words were dropped in the 1983 act.

Oregon Laws 1979, chapter 772, also contained three other "substantial evidence" provisions, two relating specifically to LUBA, and one amending the writ of review statutes. All contained the language "substantial evidence in the whole record." Section 4(7) (now codified, with minor changes not relevant to this case, as ORS 197.830(11)(c)) provided: "The board [LUBA] shall be bound by any finding of fact of the city, county or special district governing body or state agency for which there is substantial evidence in the whole record." Section 6a(8)(c) (now codified as ORS 197.850(9)(c)) provided that a court could reverse a LUBA order if the order was based on LUBA findings "not supported by substantial evidence in the whole record." Section 13 amended ORS 34.040, which specifies the grounds for allowing a writ of review, by appending the phrase "in the whole record" to "finding or order not supported by substantial evidence."

cases under Oregon's Administrative Procedure Act (APA). *See* Minutes, Senate Committee on Trade and Economic Development, March 14, 1979, exhibit D, p 5 (testimony of Steven Schell); Minutes, House Committee on the Judiciary, June 23, 1979, pp 20-22 (testimony of Elizabeth Stockdale, legislative counsel). At that time, the APA provided, in ORS 183.482(8)(d), that a court could reverse or remand an agency order in a contested case if the order was "not supported by substantial evidence in the whole record," the identical language used to describe LUBA's scope of review.[8]

The phrase "substantial evidence in the whole record" entered the APA in 1971 as part of an overhaul of the APA effected by HB 1213, which was drafted by an administrative law committee of the Oregon State Bar. Or Laws 1971, ch 734, § 18(7)(d); Report of the Committee on Administrative Law of the Oregon State Bar on the Conforming Amendments to HB 1213 to the Committee on the Judiciary of the House of Representatives. Section 18(7)(d) of the 1971 act directed a reviewing court to reverse or remand an agency order "not supported by reliable, probative and substantial evidence in the whole record." The bar committee's report on the proposed legislation states that the scope of review provisions were based on the Model State Administrative Procedure Act (MSAPA). 1967 Oregon State Bar Committee Reports 24.

The MSAPA was first approved in 1946 and substantially revised in 1961. The provisions for judicial review of administrative factual determinations in the original and revised models differed significantly, but both made reference to review upon the "whole" or "entire" record. Section 12(7)(e) of the original model provided for remand or reversal

---

[8] Although the APA provision governing the scope of judicial review in contested cases was rewritten in 1979, Or Laws 1979, ch 593, § 24(8), LUBA's scope of review was based on the APA as it existed before the 1979 changes. As rewritten, the APA provided: "The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record." The omission of the word "whole" before "record" appears to have been inadvertent and was corrected in 1985 by the addition of the following sentence: "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." Or Laws 1985, ch 757, § 2. The legislative history reveals that without doubt the legislature intended that the statute reflect the decision in *Universal Camera Corp. v. Labor Bd.*, 340 US 474, 71 S Ct 456, 95 L Ed 456 (1951).

of an agency order if the order was "unsupported by competent, material, and substantial evidence in view of the entire record as submitted." 9C Uniform Laws Annotated 174, 184 (1957). Section 15(g)(5) of the revised model provided for remand or reversal if the order was "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." 14 Uniform Laws Annotated 357, 431 (1980). The bar committee rejected the "clearly erroneous" test of the revised model in favor of the "substantial evidence" test of the original, but retained the remaining language of the revised model, in particular the phrase "whole record."

The federal Administrative Procedure Act (federal APA), which was enacted in the same year the MSAPA was approved, also refers to the "whole record" in providing for review of factual determinations. Section 10(e) of the federal APA requires a reviewing court, in evaluating an administrative decision for substantial supporting evidence, to "review the whole record." 60 Stat 237, 244, 5 USC § 706(2).

These references to review upon the "whole" or "entire" record can be traced to the widespread perception in the 1930s and 1940s that courts had, at least with respect to review of administrative decisions, wrongly interpreted the longstanding "substantial evidence" rule to mean that the substantiality of evidence supporting a decision was to be evaluated by considering the supporting evidence alone. That perception was described in the influential minority report to the 1941 final report of the U.S. Attorney General's Committee on Administrative Procedure:

"The present scope of judicial review is also subject to question in view of one of the prevalent interpretations of the 'substantial evidence' rule set forth as a measure of judicial review in many important statutes. Under this interpretation, if what is called 'substantial evidence' is found anywhere in the record to support conclusions of fact, the courts are said to be obliged to sustain the decision without reference to how heavily the countervailing evidence may preponderate — unless indeed the stage of arbitrary decision is reached. Under this interpretation, the courts need to read only one side of the case and, if they find any evidence there, the administrative action is to be sustained and the record to the contrary is to be ignored."

Final Report of the Attorney General's Committee on Administrative Procedure, S Doc No 8, 77th Cong, 1st Sess 210-11 (1941) (minority report); *see also* Stason, *"Substantial Evidence" in Administrative Law,* 89 U Pa L Rev 1026, 1049-50 (1941). The minority report recommended that authority be given to reviewing courts to reverse decisions "unsupported, upon the whole record, by substantial evidence." Final Report of the Attorney General's Committee on Administrative Procedure, *supra,* at 246.

The recommendation of the minority report was incorporated into the federal APA. *See* 5 USC § 706(2); *Universal Camera Corp. v. Labor Bd.,* 340 US 474, 488, 71 S Ct 456, 95 L Ed 456 (1951). Justice Frankfurter's opinion for the unanimous court in *Universal Camera* interpreted the function of courts under the "whole record" standard as follows:

> "Whether or not it was ever permissible for courts to determine the substantiality of evidence supporting a Labor Board decision merely on the basis of evidence which in and of itself justified it, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn, the new legislation definitively precludes such a theory of review and bars its practice. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. This is clearly the significance of the requirement * * * that courts consider the whole record. Committee reports and the adoption in the Administrative Procedure Act of the minority views of the Attorney General's Committee demonstrate that to enjoin such a duty on the reviewing court was one of the important purposes of the movement which eventuated in that enactment.
>
> "To be sure, the requirement for canvassing 'the whole record' in order to ascertain substantiality does not furnish a calculus of value by which a reviewing court can assess the evidence. * * * Nor does it mean that even as to matters not requiring expertise a court may displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.* Congress has merely made it clear that a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view."

*Id.,* 340 US at 487-88; *see also* S Doc No 248, 79th Cong, 2d Sess 214, 280 (1946) ("The requirement of review upon 'the whole record' means that courts may not look only to the case presented by one party, since other evidence may weaken or even indisputably destroy that case.").

The minority report, along with the so-called "Benjamin Report," also influenced the drafting of the MSAPA. *See* 9C Uniform Laws Annotated 175-76 (1957). The Benjamin Report, formally entitled "Administrative Adjudication in the State of New York," was an extensive report on state administrative procedure presented to the governor of New York in 1942. With respect to the scope of judicial review of factual determinations, the Benjamin Report was notable for its approving discussion of *Matter of Stork Restaurant, Inc. v. Boland,* 282 NY 256, 26 NE2d 247 (1940), which held that in applying the substantial evidence test, "[t]he evidence produced by one party must be considered in connection with the evidence produced by the other parties. Evidence which unexplained might be conclusive may lose all probative force when supplemented and explained by other testimony." *Id.,* 26 NE2d at 255. The Benjamin Report concluded: "The substantial evidence test, as defined by the *Stork Restaurant* case, is thus a test of the rationality of a quasi-judicial determination, taking into account all the evidence on both sides." *Administrative Adjudication in the State of New York, supra,* at 329.

The influence of the minority report and the Benjamin Report on the scope of review provisions of the MSAPA can clearly be seen in changes made in the drafts of the MSAPA after the publication of those reports. The 1939 draft, in section 4(4), called for reversing administrative decisions "unsupported by substantial evidence or clearly erroneous." Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings 165 (1939). By 1942, draft section 23(4) called for reversing decisions "unsupported by substantial evidence in view of the entire record as submitted." Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings 276 (1942). This is not significantly different from the provision that received final approval in 1946 as section 12(7)(e) of the MSAPA: "unsupported by competent, material, and substantial evidence in view of the entire record as submitted."

■ Whatever may have been the application of the "substantial evidence" test prior to the adoption of the federal APA and the MSAPA, the prevailing view since that time has been that statutory references to "whole" or "entire" record review are directions to reviewing courts to evaluate the substantiality of supporting evidence by considering all the evidence in the record. *E.g., Universal Camera Corp. v. Labor Bd., supra; Green Bay & Western Railroad Co. v. Public Serv. Com'n,* 269 Wis 178, 68 NW2d 828, 832 (1955); 4 Davis, Administrative Law Treatise § 29.03, p 130 (1958); *see also* 5 Davis, Administrative Law Treatise § 29:22, pp 435-38 (2d ed 1984); Jaffe, Judicial Control of Administrative Action 600-04 (1965). Given this prevailing view, we conclude that the Legislative Assembly's purpose in using this phrase in the APA and subsequently in ORS 197.835(8)(a)(C) was to enact that view. No other adequate meaning of the phrase is suggested by respondents or legislative history. The phrase, unless it is superfluous, cannot be meant to direct a reviewing court or tribunal to search "the whole record" for evidence that, viewed in isolation, is "substantial"; a court or tribunal would necessarily have to do that even if the governing standard were simply "supported by substantial evidence."

Respondents contend that several opinions of this court, *e.g., Menges v. Bd. of Comm.,* 290 Or 251, 621 P2d 562 (1980); *Bay v. State Board of Education,* 233 Or 601, 378 P2d 558 (1963), have applied a "substantial evidence" test by evaluating the substantiality of supporting evidence without considering the whole record. The point of this contention is apparently that the Legislative Assembly, notwithstanding its use of the phrase "in the whole record," intended to adopt this method of evaluation when it enacted ORS 197.835(8)(a)(C). As noted, there is no support in the legislative history for this contention. Moreover, although there is language in the opinions cited by respondents that evidence contrary to a decision cannot overcome a decision based on "substantial evidence," the opinions do not address whether the substantiality of the supporting evidence was evaluated in isolation or upon all the evidence. None of the opinions purported to reject the *Universal Camera/Stork Restaurant* formulation of the "substantial evidence" test, and in several opinions, the court noted the weakness of contrary evidence in upholding the decision under review. *E.g., Menges v. Bd. of Comm., supra,* 290 Or at

264; *Western Amusement v. Springfield,* 274 Or 37, 44-46, 545 P2d 592 (1976).[9]

One explanation for this court's past failure to address the "whole record" issue may be that reviewing the substantiality of evidence on less than the whole record is somewhat of an irrational exercise. As Professor Jaffe noted prior to the enactment of the federal APA, "Obviously responsible men would not exercise their judgment on only that part of the evidence that looks in one direction; the rationality or substantiality of a conclusion can only be evaluated in the light of the whole fact situation or so much of it as appears." *Administrative Procedure Re-examined: The Benjamin Report,* 56 Harv L Rev 704, 733 (1943).

---

[9] *Cf. City of Portland v. Bureau of Labor and Ind.,* 298 Or 104, 690 P2d 475 (1984). This case was decided after the enactment of ORS 197.835(8)(a)(C), but it refutes respondents' contention that this court has consistently held that the substantiality of evidence is to be evaluated without considering contrary evidence. The court, reviewing under ORS 183.482(8)(c) (prior to its 1985 amendment, which explicitly enacted "whole record" review), upheld a determination of the Commissioner of the Bureau of Labor that the City of Portland discriminated against women in the payment of compensation for work. This court stated:

"On judicial review under ORS 183.482(8)(c), a court can reverse the Commissioner only if the only reasonable deduction to be drawn *from the evidence as a whole, including that presented by the City,* is that the disparity in pay was other than 'because of' Potter's female sex. To put it another way, if a reasonable person on the evidence in the record could draw the inference that the acknowledged disparity arose from compensating the female employe at a lower rate than the male employe 'because she is a female,' the Commissioner's decision on the facts must prevail, no matter what the court might believe from the evidence." (Emphasis added.)

298 Or at 119. *See also Brown v. AFSD,* 75 Or App 98, 102, 705 P2d 236 (1985) (holding that, "in view of the whole record," agency decision was not supported by substantial evidence); *id.* at 102-04 (Gillette, J., concurring) (urging that "the pertinent methodology [for reviewing for substantial evidence] is that enunciated by the United States Supreme Court in *Universal Camera").*

Some decisions of this court have applied an "any evidence" test or an "any substantial evidence" test that does not appear to have involved a consideration of the entire record. These decisions, however, involved writ of review cases decided prior to amendments permitting review of factual determinations, *see, e.g., City of Portland v. Garner et al,* 226 Or 80, 92, 358 P2d 495 (1961) ("any evidence whatever"); *Smith v. City of Portland,* 25 Or 297, 301, 35 P 665 (1894) ("entire absence of proof"); or review of jury findings, *see, e.g., Wagner v. Kaiser Foundation Hospitals,* 285 Or 81, 84, 589 P2d 1106 (1979) ("any competent evidence"); *Hansen v. Bussman,* 274 Or 757, 763, 549 P2d 1265 (1976) ("any substantial evidence"). Review of jury findings or verdicts is governed by Article VII (Amended), section 3, of the Oregon Constitution, which provides: "[N]o fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict."

## III.

Having decided that LUBA's evaluation of the substantiality of evidence supporting a decision must consider all the evidence in the record, we must now decide the proper disposition of this case. ORS 197.850(9) provides that, on judicial review of a LUBA order, the court

"shall reverse or remand the order only if it finds:

"(a) The order to be unlawful in substance or procedure, but error in procedure shall not be cause for reversal or remand unless the court shall find that substantial rights of the petitioner were prejudiced thereby;

"(b) The order to be unconstitutional; or

"(c) The order is not supported by substantial evidence in the whole record as to facts found by the board under ORS 197.830(11)."

Because neither findings made by LUBA nor the constitutionality of its order are at issue, our review of its order is limited to whether the order is "unlawful in substance or procedure."

If LUBA were to affirm a land use decision not supported by substantial evidence in the whole record, LUBA's affirmance would be "unlawful in substance" and subject to reversal or remand upon judicial review. Nevertheless, judicial review under ORS 197.850 is of LUBA's order, not the decision of the local government. Whether any particular decision is "supported by substantial evidence in the whole record" depends upon an evaluation of the unique evidence in each case. The Legislative Assembly has committed to LUBA the task of making that evaluation. ORS 197.835(8)(a)(C). Indeed, one of the principal purposes of creating LUBA was to simplify the task of courts reviewing land use decisions, thereby speeding the process of judicial review. *See* Or Laws 1979, ch 772, § 1a; ORS 197.805. Therefore, where LUBA has properly understood and applied the "substantial evidence" test of ORS 197.835(8)(a)(C), a reviewing court should affirm its order, notwithstanding the reviewing court's disagreement with LUBA as to whether the evidence is "substantial." *Cf. Benton County v. Friends of Benton County,* 294 Or 79, 90, 653 P2d 1249 (1982) ("If an agency correctly understands the

terms of the governing statute, the determination that a particular factual situation satisfies the criteria for invoking the agency's procedure is primarily for the agency to make."). This does not mean, of course, that a reviewing court must blindly accept LUBA's evaluation of substantiality. The evidence in a particular case might be so at odds with LUBA's evaluation that a reviewing court could infer that LUBA had misunderstood or misapplied its scope of review, and reversal or remand might be proper. The Court in *Universal Camera,* confronting an analogous problem, stated:

> "Whether on the record as a whole there is substantial evidence to support agency findings is a question which Congress has placed in the keeping of the Courts of Appeals. This Court will intervene only in what ought to be the rare instance when the standard appears to have been misapprehended or grossly misapplied."

*Universal Camera Corp. v. Labor Bd., supra,* 340 US at 491.

■      Whether LUBA misapplied the substantial evidence test in this case is unclear. In the opinion accompanying its order, LUBA cites Court of Appeals opinions in *Home Builders v. Metro Service Dist.,* 54 Or App 60, 633 P2d 1320 (1981); *Christian Retreat Center v. Comm. for Wash. Co.,* 28 Or App 673, 560 P2d 1100 (1977); and *Braidwood v. City of Portland,* 24 Or App 477, 546 P2d 777 (1976). These opinions are somewhat ambiguous with respect to whether substantiality must be evaluated by considering the whole record. Particularly ambiguous is the statement in *Home Builders,* relied upon by the Court of Appeals in this case, that "substantial evidence consists of evidence which a reasonable mind could accept as adequate to support a conclusion." *Home Builders v. Metro Service Dist., supra,* 54 Or App at 62 (quoting *Braidwood v. City of Portland, supra,* 24 Or App at 480). The statement begs the question how the adequacy of the supporting evidence is to be evaluated. A person might, considering supporting evidence in isolation, reasonably rely upon that evidence to reach a conclusion, but if the supporting evidence is sufficiently refuted by other evidence, then continued reliance upon the supporting evidence is unreasonable, no matter how substantial that evidence would appear in isolation. Whether the court in *Home Builders* would have evaluated the reasonableness of the supporting evidence in isolation or in light of all the evidence is unclear.

LUBA's opinion suffers from the same ambiguity as the statement quoted from *Home Builders.* LUBA states that the evidence supporting the city's decision is "substantial" or "sufficient to form the basis for a decision" but does not state whether the substantiality of that evidence was evaluated in isolation or upon the whole record. Although from other statements in its opinion we have little doubt that LUBA would have reached the same result had it correctly evaluated the substantiality of the evidence supporting the city's decision, we believe that the appropriate course, in light of our limited scope of review, is to remand the case to LUBA so that LUBA can make its own evaluation of the evidence.

We emphasize that the question LUBA is to decide on remand is simply whether, in light of all the evidence in the record, the city's decision was reasonable. *See Universal Camera Corp. v. Labor Bd., supra,* 340 US at 487-88; *City of Portland v. Bureau of Labor and Ind.,* 298 Or 104, 119, 690 P2d 475 (1984); *cf.* ORS 183.482(8)(c) ("Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."). Obviously, for a decision to be reasonable, it need not be the decision that LUBA would have made on the same evidence.

We also emphasize that LUBA, in its written opinions, need not always address in detail "whether or not the conflicting evidence rendered the supporting evidence no longer 'substantial,' and why," as petitioners contend. It would be helpful and desirable for LUBA to do that, but the function of a reviewing court under ORS 197.850(9)(a) is only to determine whether LUBA has correctly understood and applied the appropriate standard of review. Where a reviewing court can make that determination, there is no obligation upon LUBA to explain itself further. But we caution that where the evidence in the record is such that it would appear to a reviewing court that LUBA has misunderstood or misapplied ORS 197.835(8)(a)(C), LUBA courts reversal if it does not explain its decision in more detail than a simple statement that it finds, upon consideration of all the evidence in the record, that the local government's decision is or is not supported by substantial evidence. *Cf. Dennis v. Employment Div.,* 302 Or 160, 168-70, 728 P2d 12 (1986) (where evidence appears to be strongly contrary to a referee's findings, the

referee should explain the findings in order to justify them to a reviewing court).

The decisions of the Court of Appeals and of LUBA are reversed. The case is remanded to LUBA for reconsideration in light of this opinion.

**PETERSON, C. J.,** concurring.

The LUBA order suggests that LUBA may have evaluated the evidence as required by Part II of the majority opinion. However, because there is some question whether LUBA misapplied the substantial evidence test, I concur in the remand to LUBA.

The remand to LUBA does not necessarily require a new hearing. What is required is a reconsideration in light of the rules stated in the majority opinion. If LUBA affirms the City's decision, on the substantial evidence question, the order should state that LUBA considered all the evidence in the whole record and that the evidence supporting the City's decision is substantial, after giving full consideration to all the evidence, whether it bolsters or detracts from the evidence supporting the decision.

Jones, J., joins in this concurring opinion.