Argued and submitted May 23, 1986, reargued May 13, affirmed July 20, 1988

In the Matter of
Thomas Dempsey, Claimant.

DEMPSEY,
*Petitioner,*

*v.*

SENIOR SERVICES DIVISION,
*Respondent.*

(CA A36403)

758 P2d 367

Stephen L. Brischetto, Portland, argued the cause for petitioner. With him on the brief was Baldwin & Brischetto, Portland.

Philip Schradle, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Deits, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioner, a mentally retarded young adult, seeks review of the Senior Services Division's (SSD) denial of his request for placement at SSD's Mt. Scott Residential Care Facility (Mt. Scott).[1] SSD based its decision on OAR 410-05-080 to 410-05-100, its rules implementing ORS 410.040 *et seq.*[2] The rules establish a scheme whereby different residential facilities are provided for persons with different kinds of "primary service needs." Generally, facilities for persons suffering from mental retardation and certain other problems come within the jurisdiction of the Mental Health Division (MHD), and facilities which serve the infirm elderly are under SSD's jurisdiction. A mentally retarded person can qualify for an "exception" and obtain placement in an SSD facility only by establishing that no appropriate MHD facility is available and that the SSD facility is "capable of serving [his] needs."

SSD concluded that petitioner's primary service needs are those "associated with mental retardation," including assistance in "basic activities of daily living." Mt. Scott is primarily equipped to serve the needs of the elderly. SSD therefore determined that petitioner's placement there would not be "appropriate" and that his needs called for a placement at a MHD facility or in adult foster care under MHD's auspices. OAR 410-05-100(1). SSD further concluded that petitioner had not established that an appropriate MHD placement was unavailable or that Mt. Scott was capable of serving his needs. Therefore, he did not qualify for an exception under OAR 410-05-100(2) to permit his placement at Mt. Scott.

Petitioner's first argument is that SSD's rules are inconsistent with the applicable statutes in effect at the time of its order. SSD was created by Oregon Laws 1981, chapter

---

[1] Petitioner also brought a federal court action, asserting that SSD's denial violated section 504 of the Rehabilitation Act of 1973. 29 USC § 794. That action was decided in the defendants' favor in *Dempsey v. Ladd*, 840 F2d 638 (9th Cir 1988). We held our review in abeyance, pending the decision in that case.

[2] The statutes and rules discussed in this opinion were the ones in effect in May, 1985, when SSD issued its order. ORS chapter 410 was amended in a number of particulars by Oregon Laws 1985, chapter 180. The parties do not argue, and we do not consider, what effect, if any, the amendments might have on petitioner's request for placement. *See present* ORS 410.040(1).

784, and was charged with responsibilities for the handicapped as well as the elderly. ORS 410.040(6)(b)(A) defined "handicapped person" to include, as relevant, one who

"is mentally retarded or developmentally disabled and resides in or needs placement in a residential program administered by the Senior Services Division."

ORS 410.060 provided, in relevant part:

"(1)   It is the policy of the State of Oregon that handicapped persons served by the Senior Services Division shall also receive necessary services, as appropriate for their needs, from other state agencies and divisions.

"(2)   In carrying out the provisions in subsection (1) of this section, the Department of Human Resources shall insure that the Senior Services Division negotiates interagency agreements and coordinates services with the Mental Health Division, Vocational Rehabilitation Division, Employment Division, Children's Services Division and the Department of Education for the provision of appropriate services to handicapped clients of the Senior Services Division."

Section 5(1)(a) of the 1981 act provided:

"Agreements and coordination described in [ORS 410.060(2)] shall include but not be limited to the following:

"(a)   After creation of the Senior Services Division, the Department of Human Resources shall transfer to the Mental Health Division jurisdiction over specialized foster care homes and residential care facilities exclusively serving persons with mental retardation or developmental disabilities, mental or emotional disturbances, and alcohol or drug abuse or dependence. This transfer shall be completed by July 1, 1982, and shall include associated fiscal and staff resources."

Petitioner states that he

"does not contest that part of the regulatory structure which permits the Mental Health Division to create specialized facilities serving only specific categories of residents. Nevertheless, that part of the regulation that articulates and implements the long term goal of denying mentally retarded people and 'other Mental Health Division clients' access to Senior Services Division facilities far exceeds anything the Legislature has approved."

He contends specifically that the rules contravene the statutes by basing a "mentally retarded client's eligibility for SSD

services on the availability of [MHD] services rather than on the mentally retarded person's need for an SSD placement."[3]

We do not agree with petitioner's general argument or his specific one. The statutes, like the rules, clearly contemplated the establishment of different facilities under the auspices of different agencies to provide the services needed by persons with different problems. It was consistent with that statutory objective to make the placement of a person in a facility which does not normally serve his primary needs contingent on the unavailability of one that does. We find no inconsistency between the statutes and the rules.

Petitioner argues next that certain terms in the rules are impermissibly vague and incapable of providing adequate guidelines and standards for applicants or the agency. We do not agree that any of the terms suffers from those defects. We also find no merit to petitioner's remaining contention that SSD's findings were not supported by substantial evidence.[4]

Affirmed.

---

[3] He also argues that the rules violate the statutes by placing the "impossible burden on [a] client" who seeks an exception under OAR 410-05-100(2) of establishing that "every individual client need is met *by the facility,*" rather than by the facility in conjunction with other "community resources." (Emphasis petitioner's.) We do not agree with petitioner's interpretation of OAR 410-05-100(2) or with his understanding of how it was applied in this case.

[4] The agency's final order was promulgated before ORS 183.482(8)(c), the provision governing our factual review of agency decisions, was amended by Oregon Laws 1985, chapter 757, section 2, and before the Supreme Court indicated in *Younger v. City of Portland,* 305 Or 346, 752 P2d 262 (1988), that the statute meant the same thing before it was amended as it did after. SSD argues that the amendment is not retroactive. We need not decide the question, because the findings are sustainable under either understanding of our scope of review.