Argued and submitted January 26, 1996, affirmed July 23, petition for review denied November 4, 1997 (326 Or 82)

In the matter of the Compensation of
Michelle Dibrito, Claimant.

Michelle DIBRITO,
*Petitioner,*

*v.*

ADULT AND FAMILY SERVICES
and SAIF Corporation,
*Respondents.*

(91-13969; CA A89201)

942 P2d 865

Robert F. Webber argued the cause for petitioner. With him on the brief was Black, Chapman, Webber & Stevens.

Michael O. Whitty, Special Assistant Attorney General, argued the cause for respondents. With him on the brief were

Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

Armstrong, J., dissenting.

## EDMONDS, J.

Claimant seeks review of a Workers' Compensation Board order that denied her injury claim. We review for substantial evidence, ORS 183.482(8)(c), and affirm.

This case has a lengthy history. We take our facts from the Supreme Court's description in *Dibrito v. SAIF*, 319 Or 244, 246-49, 876 P2d 459 (1994).

"Claimant was a caseworker for Adult and Family Services. She suffered from preexisting colitis and a preexisting personality disorder. Because of health problems, claimant sought to reduce her daily work hours by half and to take the remaining half as leave without pay. Claimant became upset during a meeting with her supervisor on May 14, 1991, during which she was informed that she would not be able to retain her status as a full-time employee if her request to work part-time were granted. Claimant experienced an episode of colitis requiring medical treatment and experienced psychological symptoms.

"Claimant filed a workers' compensation claim for her physical and mental conditions, which her employer's insurer, SAIF Corporation (SAIF), denied. After a hearing, the referee concluded that claimant had suffered a compensable accidental injury under ORS 656.702 * * *.

"SAIF appealed to the Workers' Compensation Board (Board). * * * On review of the record, the Board determined that 'claimant's psychological condition was due, in major part, to factors other than work conditions' and that, '[a]ccordingly, neither claimant's mental condition nor her physical symptoms resulting from on-the-job stress are compensable.'

"Claimant sought judicial review in the Court of Appeals, which affirmed the Board's order without opinion. *DiBrito v. SAIF*, 124 Or App 680, 865 P2d 1341 (1993). * * *

"* * * * *

"Claimant sought compensation for both her colitis and her personality disorder. She alleged that those disabilities were caused by the stress of the May 14, 1991, meeting at work. The Board found that claimant's preexisting personality disorder was 'unaffected by the stress at work' and

that 'the primary cause or major contributing cause of claimant's personality disorder, which [was] diagnosed in August 1991, was claimant's relationship with her mother and her inability to resolve her feelings after her mother died.' The Board concluded that 'claimant's psychological condition was due, in major part, to factors other than work conditions' and that claimant failed to prove 'that her psychological condition arose out of and in the course of her employment.' Substantial evidence supports the Board's findings relating to claimant's mental disorder. Given those findings, the Board was entitled to hold that claimant's mental disorder was not compensable under ORS 656.802.

"The Board erred, however, in not analyzing separately, under ORS 656.005(7), claimant's episode of colitis, alleged to have been caused by the stress of the May 14, 1991, meeting at work. Claimant is entitled to the Board's review of that portion of her claim under the standards that apply to injuries." (Footnotes and citations omitted.)

On remand, the Board undertook to determine whether claimant's colitis condition, alleged to have been caused by the stress of the May 14 meeting, was a compensable injury under ORS 656.005(7)(a). The Board adopted the administrative law judge's (ALJ) findings that "claimant left the meeting sobbing uncontrollably, she lost control of her bowels, she went home, went to Dr. Marx and obtained a full-time release from work and went home. She was eventually admitted to the hospital for recurrent colitis and dehydration." However, it rejected the ALJ's ultimate finding that the events during the May 4, 1991, meeting were not generally inherent in every work environment and were not connected with a reasonable, corrective on-job performance evaluation. In its analysis, the Board noted:

"Here the medical evidence shows that prior to claimant's May 14, 1991, episode of colitis, claimant had a long-standing history of abdominal distress, 'including acute and chronic colitis.' Furthermore, claimant's treating physician, Dr. Marx, opined that the stress of the work meeting on that day made claimant's preexisting colitis symptomatic.

"* * * * *

"Because claimant has had an extensive history of abdominal disease and a preexisting colitis condition, we

find that causation of claimant's resultant condition is a complex medical question, the resolution of which turns on the medical evidence. [Citations omitted.] We rely on those medical opinions which are well reasoned and based on accurate and complete histories."

There are several medical reports that discuss claimant's resultant condition. Dr. Marx, claimant's treating physician, reported that the stress of the May 1991 work meeting made claimant's preexisting colitis symptomatic. He also concluded that claimant's need for treatment and disability was in major part caused by the stress she suffered at work.

Dr. Herbert, who reviewed the medical records on behalf of SAIF, was doubtful that claimant had experienced a recurrence of colitis. His opinion was based on a nonspecific gastritis revealed by a gastroscopy and a normal barium enema. Because no documentation regarding claimant's condition was obtained, Herbert supported a diagnosis of irritable bowel syndrome. He opined that the "usual cause" of worsening symptoms of irritable bowel syndrome was stress. However, whether the work environment was responsible for claimant's condition was a determination that Herbert believed would "perhaps be made by the psychiatrist who will be seeing [claimant]."

Dr. Thompson, the psychiatrist who examined claimant, stated that the cause of claimant's physical symptoms was in question. Thompson found that claimant had a preexisting "personality disorder mixed with dependent and compulsive traits" and "that the stress at work probably didn't have any particular effect on the personality disorder." When asked to assume that claimant had an irritable bowel syndrome and whether he felt that the May work incident was "the major cause of her problem" and the reason for her subsequent hospitalization, Thompson replied, "No." He explained that claimant's case was more complicated than merely making a temporal connection between the meeting and the onset of the condition. He suggested that claimant could have been stressed from her job but that her symptoms also could have come about because of either her faulty perceptions or as the result of preexisting "neurotic problems."[1]

---

[1] Thompson's testimony is set out later in this opinion.

The Board concluded:

> "Claimant has failed to show that the May 1991 injury (the work meeting) is and remains the major cause of her resultant abdominal/colitis condition."

It explained:

> "Dr. Marx's opinion is not persuasive because, although he opined that the stress of a meeting made a preexisting condition symptomatic, there is no indication that Dr. Marx assessed the relative contribution of different causes of claimant's condition."

As to Herbert's report, it pointed out:

> "Although Dr. Herbert offered an opinion concerning causation of worsening symptoms of irritable bowel syndrome in general, he declined to comment on the causation of *this* claimant's condition and instead deferred to a psychiatrist for that determination." (Emphasis in original.)

The Board then turned to Thompson's report and subsequent deposition:

> "Additionally, Dr. Thompson, the only psychiatrist to examine claimant, did consider the contribution of different causes of claimant's condition, but he could not conclude that work was the major contributing cause of claimant's condition or the need for treatment following the May 1991 incident. We note that, at one point, Dr. Thompson was asked to assume that all of the stress claimant had at work was work related. As we discussed above, inasmuch as claimant had faulty perceptions and preexisting 'neurotic problems' which contributed to her stress, that assumption was incorrect."

Claimant sought reconsideration of the Board's order on remand. In part, she asserted that the Board had misinterpreted Thompson's opinion. In response, the Board said:

> "As we have previously explained, notwithstanding his hypothetical opinion, *we interpret Dr. Thompson's ultimate conclusion to be that the primary cause of claimant's current disability and need for medical treatment are non-work factors*. In any event, *assuming for the sake of argument that claimant's perceptions of all of her alleged work stress were real, Dr. Thompson also referred to claimant's preexisting*

*'neurotic problems' as a contributor to her stress.* In light of such considerations, we are unable to find that Dr. Thompson['s opinion] supported a conclusion that claimant's work stress was the major contributing cause of her current colitis condition." (Emphasis supplied.)

On review, claimant's assignment of error reads:

"The Board's ultimate conclusion that Dr. Thompson's opinion was that the primary cause of claimant's disability and need for medical treatment was non-work factors is contrary to the Findings of Fact and not supported by substantial evidence."

■ "[S]ubstantial evidence supports a finding when the record, viewed as a whole, permits a reasonable person to make the finding. * * * A court must 'evaluate the substantiality of supporting evidence by considering *all* the evidence in the record.'" *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990) (emphasis in original) (quoting in part from *Younger v. City of Portland*, 305 Or 346, 356, 752 P2d 262 (1988)). After reviewing all of the medical evidence on a complex medical question, the Board was not persuaded that claimant had carried her burden of persuasion that work-related stress was the major contributing cause of her colitis condition. We conclude that the Board's reasons for not being persuaded are reasons on which a reasonable factfinder could rely. In particular, the Board reasoned that the hypothetical questions asked of Thompson excluded the component of her preexisting condition, and therefore, that the answers that followed were not persuasive. In other words, Thompson's report and testimony could reasonably be understood to mean that he could not determine whether the May 1991 work incident was the major contributing cause of claimant's colitis/irritable bowel syndrome condition, when the preexisting condition was factored into the causal equation.

The dissent does not believe that the Board was unpersuaded by the evidence that the May 1991 meeting was the major contributing cause of the colitis condition. Rather, it focuses on a finding that the Board never made, *i.e.*, that the Board adopted the meaning of Dr. Thompson's opinion as the dissent interprets it. The dissent relies primarily on an excerpt from Thompson's deposition. The context of that

excerpt is as follows: Thompson testified that, "The cause of the symptoms is what is in question" and that "I think the physical symptoms were probably mostly due to the flare-up of the colitis. Again I was hoping that the gastroenterologist would clarify that point." Counsel then handed to Thompson a medical report from Herbert and asked Thompson to interpret what Herbert had determined as the cause of claimant's symptoms. Thompson answered:

> "Well, Dr. Herbert says that there was not enough evidence to make a diagnosis of colitis, and indicated that the correct diagnosis may be irritable bowel syndrome. If that is the correct diagnosis, then he states that the usual cause of worsening of symptoms is stress; and he said whether or not the work environment was responsible for that remains to be determined by the psychiatrist."

Then the following questions and answers ensued:

Q. "So he sort of handed the ball back to you?"

A. "Yes."

Q. *"And if you assume that she did have an irritable bowel syndrome,* then *would that support the conclusion* that based on the temporal relationship between the incident at work and the onset of this particular condition, *that the stress at work was the major cause of her problem?"*

A. "Well, I think we have to define what problem you're talking about."

Q. "Well, the irritable bowel, at that point in time."

A. "Following that meeting and why she went into the hospital and all of that?"

Q. "Correct."

A. "[Pause.] *No.* I explained in my report that I thought it was more complicated than simply connecting up those two things in point of time. And I'm still wondering about that because I noted on page 7 of my report in the last paragraph that I think it depends whether the conditions at work were out of the ordinary to decide whether or not the stress is related to the job. *Because she could have been stressed out about her job, but it might have been based on faulty perceptions on her part or some of her neurotic problems that she had had her whole life.* So I think we have to

get to the point of whether or not there was a legitimate stressful event that occurred at work."

Q. "If you assume that the conditions at work were conditions other than conditions generally inherent in every work situation or reasonable disciplinary corrective job performance evaluation action by the employer, and that they existed in a real and objective sense—which is something someone else would have to decide—but if you assumed those facts, would the situation at work in May of 1991 be the major cause of her stress?"

A. "So you're asking me if the conditions are not generally inherent in every work situation, assume that?"

Q. "Right."

A. "Then I would say that the exacerbation of her symptoms, which may or may not be irritable bowel syndrome, that those were—the major cause of that was the work stress, *if that assumption is correct.*" (Emphasis supplied.)

In isolation, the testimony that the dissent relies on could reasonably be understood in the way in which the dissent asserts. However, there is other testimony from Thompson which would cause a reasonable person not to be persuaded of claimant's position. Finally, the dissent's focus on the Board's assumption of a fact in its opinion for the sake of argument when it did not make that finding underlines its error in conducting, in effect, a *de novo* review. In sum, there is substantial evidence to support the Board's decision.

Affirmed.

**ARMSTRONG, J.,** dissenting.

The majority affirms the denial of claimant's colitis claim on the ground that substantial evidence supports the board's interpretation of Thompson's opinion of the cause of claimant's condition. The majority is wrong. Thompson's opinion cannot be understood to mean what the board says it means. Because the board's rejection of the claim is premised on its interpretation of Thompson's opinion, the claim must be remanded to the board for reconsideration. *See, e.g., Liberty Northwest Ins. Corp. v. Verner*, 139 Or App 165, 168-69, 911 P2d 948 (1996).

Thompson examined claimant at employer's request. Because of the information available to him, he could not resolve whether the major cause of claimant's colitis condition was work-related stress. He explained in his report that the resolution of that issue depended on whether claimant's view of her May 14 meeting with her supervisor was correct:

"However, I would wonder if the conditions of her job were out of the ordinary to the degree that would justify a stress claim. I believe it is [claimant's] opinion that [her supervisor] was out of order when he appeared to be forcing her into a job share position so that she would lose her permanent position, and she saw that as a retaliatory move on his part. *If her view is correct, then she probably does have a legitimate stress claim. On the other hand, if her view is wrong and she was primarily angry over his way of handling it, then the stress could be related more to the past history of losses of her father and mother, the job being of primary importance to her at this point in her life, and the fear of losing that.*"

(Emphasis supplied.)

It is not surprising that Thompson testified as he did. He had not been given information on which to evaluate whether claimant correctly perceived the May 14 events. Consequently, he could state only a conditional conclusion about whether the major cause of claimant's colitis condition was work-related stress.

Thompson expanded on those points at his deposition. In doing that, he pinned down the information that, if known, would lead him to conclude that claimant's condition was work related:

Q. "And if you assume that [claimant] did have an irritable bowel syndrome, then would that support the conclusion that based on the *temporal relationship* between the incident at work and the onset of this particular condition, that the stress at work was the major contributing cause of her problem?

"* * * * *

A. "[Pause.] No. I explained in my report that I thought it was more complicated than simply connecting up

those two things in point in time. * * * *I think it depends whether the conditions at work were out of the ordinary to decide whether or not the stress is related to the job. Because she could have been stressed out about her job, but it might have been based on faulty perception on her part or some of her neurotic problems that she had had her whole life. So I think we have to get to the point of whether or not there was a legitimate stressful event that occurred at work.*

Q. "If you assume that the conditions at work were conditions other than conditions generally inherent in every work situation or reasonable disciplinary corrective job performance evaluation action by the employer, and that they existed in a real and objective sense—which is something someone else would have to decide—but if you assumed those facts, would the situation at work in May of 1991 be the major cause of her stress?

"* * * * *

A. *"Then I would say that the exacerbation of her symptoms, which may or may not be irritable bowel syndrome, that those were—the major cause of that was work stress, if that assumption is correct."*

(Emphasis supplied.)

Thus, Thompson testified that claimant's stress could have been caused by her job, by her misperception of the situation or by her neurotic problems, *depending* on whether a legitimately stressful event had occurred. However, if claimant did *not* misperceive the May 14 events, and those events were beyond those generally inherent in every work setting, then the May 14 events were the major cause of claimant's condition.[1]

In its initial order, the board interpreted Thompson's testimony as follows:

---

[1] It is worth noting that a medical diagnosis of the cause of claimant's condition presumably did not depend on whether the conditions at work were other than those generally inherent in every work setting. The conditions at work could have caused the claimant's colitis episode even if they were conditions generally inherent in every work setting. The reason that the nature of the work conditions matters is that ORS 656.802(3)(b) permits recovery for the effects of work-related stress only if those effects are *not* the product of conditions that are generally inherent in every work setting or of reasonable disciplinary action.

"Dr. Thompson, the only psychiatrist to examine claimant, did consider the contribution of different causes of claimant's condition but he could not conclude that work was the major contributing cause of claimant's condition or the need for treatment following the May 1991 incident. We note at one point Dr. Thompson was asked to assume that all of the stress claimant had had at work was work related. As we discussed above, inasmuch as claimant had faulty perceptions and preexisting 'neurotic problems' which contributed to her stress, that assumption was incorrect."

That interpretation is simply wrong. Thompson was not asked to assume that "all of the stress claimant had had at work was work related." Instead, Thompson was asked to assume only that the conditions of the May 14 meeting were "conditions other than conditions generally inherent in every work situation * * * and that they existed in a real and objective sense." Thompson said that claimant's condition *could* have been caused by claimant's misperception of events and by her preexisting neurotic problems, *but,* if claimant's perception of the events *were* correct and the events *were* other than those generally inherent in every employment, then the major cause of claimant's condition *was* work-related stress.

On reconsideration, the board again misconstrued Thompson's testimony:

"As we have previously explained, notwithstanding his hypothetical opinion, we interpret Dr. Thompson's ultimate conclusion to be that the primary cause of claimant's current disability and need for medical treatment are non-work factors. In any event, assuming for the sake of argument that claimant's perceptions of all of her alleged work stress were real, Dr. Thompson also referred to claimant's preexisting 'neurotic problems' as a contributor of stress. In light of such considerations we are unable to find that Dr. Thompson supported a conclusion that claimant's work stress was the major contributing cause of her current colitis condition."

Contrary to the board's conclusion, Thompson's testimony cannot fairly be read to imply that "the primary cause of claimant's current disability and need for medical treatment are non-work factors." As previously explained, Thompson testified that, whatever contribution nonwork factors made

to claimant's condition, the major contributing cause of the condition was work-related stress *if* claimant correctly perceived the May 14 events. Thompson's testimony cannot be interpreted to say anything different.

The majority notes that the board did not find that the May 14 meeting was indeed a legitimately stressful event. 149 Or App at 329. That is beside the point. The board based its decision on the assumption that claimant had *not* misperceived the situation. Once the board made that assumption, it could not interpret Thompson's testimony to mean anything other than what it says, namely that "the major cause of [the exacerbation of claimant's symptoms] was work stress."

In summary, the board relied on its interpretation of Thompson's testimony to reject claimant's colitis claim. Because the board and the majority misconstrue that testimony, I respectfully dissent.