Argued and submitted April 5, affirmed July 6, 2004

HODGE OREGON PROPERTIES, LLC,
*Respondent,*

*v.*

LINCOLN COUNTY,
*Petitioner,*

*and*

Ann M. DENISON,
*Intervenor below.*

2003-157; A123733

93 P3d 93

Wayne Belmont argued the cause and filed the brief for petitioner.

Douglas R. Holbrook argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Leeson, Judge pro tempore.

LANDAU, P. J.

**LANDAU, P. J.**

The Lincoln County Board of Commissioners granted a conditional use permit for siting a nonforest dwelling on land zoned both "Timber Conservation" (TC) and "Planned Marine" (M-P). A neighbor, respondent Hodge Oregon Properties, LLC (Hodge), appealed the decision to the Land Use Board of Appeals (LUBA), which remanded the decision to the county. *Hodge Oregon Properties, LLC v. Lincoln Cty.*, 46 Or LUBA 290 (2004). The county now seeks review of LUBA's decision, arguing that LUBA's decision is based on erroneous interpretations of various provisions of the county's development code. We affirm.

The relevant facts are undisputed and are taken from LUBA's opinion. Intervenor Ann Denison owns a small parcel of forested property located along the Alsea Highway. As noted, the property is "split zoned"; a part of it is zoned TC, and the remainder is zoned M-P. Denison applied for a conditional use permit, proposing to site a building on the portion of the property that is zoned TC. The proposed site plan for the development showed that a portion of the property within the M-P zone would serve as either a primary or a secondary drain field.

Hodge opposed the application, arguing that, among other things, Denison had failed to show that the dwelling and its septic system would be located entirely within the TC zone. Hodge argued that, under the applicable provisions of the county code, dwellings are permitted only in the TC—and not in the M-P—portion of the property and that the septic system is part of a dwelling.

The county approved the application, subject to conditions. Among the conditions were those requiring Denison to provide and maintain a secondary fire break "as necessary" and to demonstrate that the site has a domestic water supply from a source authorized by the Oregon Water Resources Department. The county rejected Hodge's complaint about the location of the septic system, reasoning that the fact that all or part of the septic system might be located within the M-P zone was of no consequence because the dwelling itself would be sited on the portion of the property

zoned TC. According to the county, placement of the septic system was not part of its decision at that point:

> "The ultimate location of the on-site sewage disposal system to serve the proposed dwelling is not a matter before the commission as a part of this decision. This matter will be determined in accordance with the rules and procedures of the Department of Environmental Quality. Alternatively, the commission finds no provision in the M-P zone prohibiting the installation of an on-site sewage disposal system."

Hodge appealed to LUBA. As pertinent to this appeal, it argued, (1) the county erred in approving the application when the proposed site plan showed that a portion of the septic drain field would be located in the portion zoned M-P; and (2) the conditions that the county imposed concerning fire breaks and water supply are approval criteria that must be satisfied *before* an application may be approved. LUBA agreed with Hodge on those assignments of error.

First, as to the location of the septic drain field, LUBA explained that the relevant provision of the Lincoln County Code, LCC 1.1115(28), defines a "dwelling unit" that is permitted in a TC zone as "a single unit providing complete, independent living facilities for one or more persons including permanent provisions for living, sleeping, eating, *sanitation*, and only one cooking area." (Emphasis added.) Because a septic system, by definition, is part of the dwelling, LUBA reasoned, the county erred in concluding that the location of the septic system was not a necessary part of its decision. Moreover, LUBA commented, because the M-P zone does not permit dwellings, "unless the county can find that the dwelling, including the septic system, can be sited on the portion of the property zoned TC, the dwelling may not be allowed."

Second, as to the conditions of approval, LUBA agreed with Hodge that each is a discretionary condition of approval; that is, approval is not permissible unless the conditions have been satisfied. By treating the conditions as siting or performance standards that would be subject to review by county staff, LUBA noted, the county effectively ignores the possibility that the applicant actually might not be able

to comply with them and precluded other interested persons from establishing precisely that fact through the hearings process that is required concerning conditions of approval. Accordingly, LUBA concluded, "[t]he county must either adopt findings that explain why [it] believe[s] the standards can be met in the course of adopting a new decision on remand, or allow [Hodge] an opportunity to participate in the proceedings where that determination is made."

■        On review, the county argues that LUBA erred in its disposition of the foregoing assignments of error. The county begins by contending that LUBA erred in concluding that the siting of a septic system is even relevant to the decision in this case. According to the county, the approval criteria in the Lincoln County Code say nothing of septic systems:

> "Put another way, assume that applicant had not included any reference to the septic system drainfield in its application. Could an opponent raise the issue that the information was required? Or that in its opinion a drain-field could not be located on the TC zoned portion of the parcel and therefore a feasibility determination needed to be made as part of this process? The answer is no. Nothing in the conditional use process requires the information or the determination. Once it is clearly understood that no action was taken or was required to be taken concerning the septic issue, there is no basis to proceed with interpreting the LLC concerning siting of the septic system."

Hodge responds that the county's argument misses the point, which is that it is a "dwelling" that is permitted by the code, and a "dwelling" is defined as a single living unit with "sanitation."

We agree with Hodge. LCC 1.1375(2)(y) permits nonforest "dwellings" in TC zones. LCC 1.1115(28) defines a "dwelling" as a single living unit with, among other things, "sanitation." A structure that does not have "sanitation" does not meet the definition of "dwelling." Consequently, the county's approval of a conditional use for a "dwelling" without a showing that the proposed structure has sanitation would amount to either (1) a failure to comply with the express terms of the ordinance or (2) the approval of something other than a "dwelling." Either way, the county erred in

the application of its own code. *See* ORS 197.829(1)(a) (providing that LUBA shall affirm a local government's interpretation of a land use regulation "unless * * * the local government interpretation is inconsistent with the express language of * * * the land use regulation").

The county next contends that LUBA erred in concluding that, if the septic system were located in the portion of the property zoned M-P, the county could not approve the application. According to the county, LUBA's conclusion is contrary to the county's own alternative conclusion in its approval decision that it "finds no provision in the M-P zone prohibiting the installation of an on-site sewage disposal system." The county argues that LUBA's decision cannot be reconciled with the deference to a local government's interpretation of its own ordinances that the law requires. Hodge responds that there is no local government interpretation to which LUBA was required to defer.

Again, we agree with Hodge. The county's "finding" does not state that septic drain fields are permitted in either a TC or an M-P zone. And, on review, the county cites no provision of the Lincoln County Code that says that septic drain fields are permitted in either zone.

The county next argues that LUBA erred in treating the conditions concerning fire breaks and water supply as approval criteria that must be satisfied *before* approval of the application. Hodge argues that LUBA correctly determined that to treat the conditions otherwise would deprive opponents of the opportunity to demonstrate that, in fact, Denison cannot satisfy the criteria.

We concur with LUBA's understanding of the local government's obligation on deferral of an approval standard. By treating the conditions as mere siting or performance standards, the county denied Hodge the opportunity to challenge the extent to which those conditions may be satisfied. Particularly in light of the county's failure to determine that the conditions are feasible, we find no error in LUBA's decision. *See Meyer v. City of Portland*, 67 Or App 274, 280 n 5, 280-82, 678 P2d 741, *rev den*, 297 Or 82 (1984) (citing, with approval, LUBA opinion addressing the need for land use

decision-maker to find, at a minimum, that compliance with mandatory criteria is "feasible").

Affirmed.