Argued and submitted June 9, reversed in part and remanded with instructions
August 31, 2005

## Robert PATERSON,
*Petitioner,*

*v.*

## CITY OF BEND,
Brian Dramen, Mark Dramen,
and Gordon Dramen,
*Respondents.*

## 204-155; A128319

118 P3d 842

William H. Sherlock argued the cause for petitioner. With him on the brief was Hutchinson, Cox, Coons, DuPriest, Orr & Sherlock, P.C.

Elizabeth A. Dickson argued the cause for respondents Brian Dramen, Mark Dramen, and Gordon Dramen. With her on the brief was Hurley, Lynch & Re, P.C.

No appearance for respondent City of Bend.

Before Landau, Presiding Judge, and Haselton, Judge, and Deits, Judge pro tempore.

LANDAU, P. J.

## LANDAU, P. J.

Brian, Mark, and Gordon Dramen (the Dramens) sought, and obtained, approval from the City of Bend for a phased tentative plan for a subdivision. Petitioner, a neighboring property owner, appealed to the Land Use Board of Appeals (LUBA), challenging the approval on a number of different grounds. LUBA rejected some of petitioner's contentions and affirmed the city's decision in substantial part, but it agreed with petitioner in part and remanded the city's decision for further proceedings pertaining to the plan's compliance with code provisions relating to cul-de-sacs, street curbing, and block length. Petitioner seeks review, again raising the challenges that LUBA rejected. We affirm in part and reverse and remand in part.

## I. FACTUAL BACKGROUND

The relevant facts are not in dispute. The Dramens' property is a five-acre parcel zoned RS, Urban Standard Density Residential. It is narrowly rectangular in shape, measuring approximately 165 feet wide from north to south and 1,100 feet long from east to west. There is an existing single family dwelling at the east end. Adjacent to the east end, Eagle Road runs north and south. Abutting the parcel to the north is petitioner's property, which recently has been approved for development as a residential subdivision and which includes an east-west street, Yellow Ribbon Drive, which itself ends a short distance from Eagle Road. Abutting the subject property to the west is a completed subdivision, including an east-west street, Red Oak Drive, which ends at the subject property's western edge. To the south is another property for which a subdivision plan (the Conners Park subdivision) has been approved.

The Dramens sought to develop their property in three phases totaling 31 residential lots, beginning with the easternmost portion of the property (phase 1). They proposed to extend Red Oak Drive from the western edge of the property eastward, ending in a cul-de-sac just to the west of the existing dwelling. They also proposed to extend a roadway northward from the subdivision to Yellow Ribbon Drive and to extend two roadways southward to the proposed Conners

Park subdivision. To maximize the number of lots on the narrow parcel, the Dramens proposed that, after entering the property at the western edge, Red Oak Drive would become a private street with a reduced width, no curbing, and sidewalks flush with the street level.

After a hearing, the hearings officer approved the plan. Petitioner appealed to the city council, which denied review. Petitioner then appealed the resulting final hearings officer's order to LUBA.

Before LUBA, petitioner advanced five arguments: (1) the plan did not ensure street access for the first phase and failed to include an adequate facility development plan as required by the local development ordinance; (2) the plan failed to demonstrate compliance with the Bend Area General Plan; (3) the proposed private street—which, as noted, would end in a cul-de-sac—fails to comport with the requirement of "orderly development" provided in the local development ordinance; (4) the plan failed to comply with various provisions of the local development ordinance pertaining to street and sidewalk design; and (5) the plan failed to comply with provisions of the local development code pertaining to block length.

LUBA rejected the first, second, and third arguments *in toto*, and it agreed with petitioner's remaining two arguments in substantial part. Specifically, LUBA remanded the city's decision for further explanation of how the planned cul-de-sac met the condition set out in the local development ordinance allowing cul-de-sacs based on "existing development" on "adjacent property"; to address various issues relating to curbing requirements on the private street; and for additional findings relating to grid connectivity and block length. We describe LUBA's decision in more detail below as it pertains to petitioner's assignments of error on review.

## II. ANALYSIS

On judicial review, petitioner assigns error to LUBA's rejection of three of the arguments that he advanced below, namely that (1) the plan failed to comply with the phased development standards of the local development ordinance; (2) the plan failed to comply with the Bend Area

General Plan; and (3) the plan failed to comply with the orderly development requirement of the local development code. We address each argument in turn.

A. *Phased development standards*

**1.** We begin with petitioner's argument that LUBA erred in determining that the plan satisfied the phased development standards of the local development ordinance. That ordinance provides, in part:

"PHASED TENTATIVE PLAN. An overall development plan shall be submitted for all developments affecting land under the same ownership for which phased development is contemplated. The Review Authority shall review a master development plan at the same time the tentative plan for the first phase of a phased subdivision is reviewed. The phased tentative plan shall include * * * the following elements:

"1. Overall development plan, including phase or unit sequence, and the schedule for initiation of improvements and projected completion date.

"2. Show compliance with the Bend Area General Plan and implementing land use ordinances and policies.

"3. Overall facility development plan, including transportation and utility facilities plans that specify the traffic pattern plan for motor vehicles, bicycles, and pedestrians, water system plans, sewer system plans and utility plans."

Bend Subdivision Ordinance (BSO) 3.040. Petitioner contends that the plan in this case failed to comply with BSO 3.040(1) and (3) because it lacks a schedule for, or any other evidence of, feasible street access to the first phase (again, the easternmost portion of the property). According to petitioner, on this record, none of the identified access roads to that portion has been constructed or, in some cases, even dedicated.

The hearings officer found that it was "unclear from the information provided where street access during phase 1 is located." As a result, the hearings officer required that the Dramens "demonstrate that there will be street access" before final plat approval. In affirming that aspect of the city's decision, LUBA stated that, "[g]enerally, where there is

conflicting evidence regarding whether compliance with an approval criterion is feasible, the local government may determine that compliance is feasible and impose conditions of approval as necessary to ensure compliance."

On review, petitioner argues that, in so concluding, LUBA erred. Petitioner argues that, as a matter of law, a city may not find an approval condition satisfied merely by declaring that it is a condition of approval. The Dramens respond that substantial evidence supports LUBA's determination that the proposed plan met the phased development standards of BSO 3.040(1) and (3) and that LUBA correctly concluded that the city could find compliance was feasible based on the city's imposed conditions of approval. Noting that the city required it to "demonstrate that there will be street access for each phase of development * * * prior to final plat approval," the Dramens point to four "feasible" means of access: via petitioner's own development to the north, which, at the relevant time, included a graded and partially paved roadway to the subject property; via the Conners Park subdivision to the south, which, as proposed, includes two access roads; and via Red Oak Drive to the west. They further argue that the city's interpretation of its own enactment—whereby the city found that the requirements of BSO 3.040(1) and (3) could be met through imposition of a condition of approval—is consistent with the language of the enactment and therefore is entitled to deference. *See Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992).

In principle, we agree that nothing in the development code precludes the city from, in effect, postponing a showing of compliance with specific development criteria until the final plat approval, provided there is a showing that compliance is feasible. *See Meyer v. City of Portland*, 67 Or App 274, 280 n 5, 280-82, 678 P2d 741, *rev den*, 297 Or 82 (1984) (citing, with approval, LUBA opinion addressing the need for land use decision-maker to find, at a minimum, that compliance with mandatory criteria is "feasible"). In this case, however, the hearings officer did not expressly find that compliance with the relevant access provisions was feasible. Nor, where the hearings officer stated that the location of street access was "unclear," are we able to conclude that the hearings officer implicitly made such a finding. We therefore

reverse and remand with instructions to remand to the city for further consideration of that issue, including at a minimum, some identification by the city of the factual predicates for its finding. *See Hodge Oregon Properties, LLC v. Lincoln Cty.*, 194 Or App 50, 55, 93 P3d 93 (2004) (where the local government failed to determine that compliance with applicable conditions was feasible, LUBA correctly treated the conditions as approval criteria that must be satisfied before approval of the application; to do otherwise would deprive opponents of the opportunity to demonstrate that the applicant had not satisfied the conditions).[1]

## B. *Compliance with the Bend Area General Plan*

**2.** Petitioner next argues that the plan failed to show compliance with the Bend Area General Plan, as required under BSO 3.040(2), which provides that any phased tentative plan must include a showing of "compliance with the Bend Area General Plan and implementing land use ordinances and policies." The hearings officer determined that, under ORS 197.195(1), comprehensive plan provisions do not apply to decisions such as the one at issue here, relating to a subdivision, unless the plan provisions are adopted as part of the local government's own ordinances. The hearings officer also noted that the general plan itself contemplates that it consists of statements of public policy, the actual implementation of which is accomplished by the local government's land use enactments. The hearings officer concluded that, accordingly, the goals and policies of the Bend Area General Plan "are met when the implementing land use ordinance provisions are satisfied."

LUBA's reasoning was slightly different. It reasoned that, in order to incorporate any specific plan standard into a local government enactment, the local government must do so specifically and that BSO 3.040(2) "falls far short" of such incorporation. LUBA therefore affirmed that the

---

[1] At oral argument—although not in his brief—petitioner also asserted that, by postponing the showing of compliance, the city effectively deprived him of an opportunity to contest whether the Dramens actually comply with the approval condition. It is not clear to us from the record whether that is, in fact, correct. In any event, given our decision to remand on other grounds, we need not address that contention.

Dramens were not required to comply with the plan policies themselves.

Petitioner complains that LUBA ignored the plain language of BSO 3.040(2), which requires compliance with the Bend Area General Plan. The Dramens respond that the requirement under BSO 3.040(2) that a tentative plan "show compliance" with the general plan constitutes only a "general" incorporation of the standards in the general plan and that, accordingly, BSO 3.040(2) does not require compliance with any specific general plan standards.

ORS 197.195(1) provides:

"A 'limited land use decision' shall be consistent with applicable provisions of city or county comprehensive plans and land use regulations. Such a decision may include conditions authorized by law. Within two years of September 29, 1991, cities and counties shall incorporate all comprehensive plan standards applicable to limited land use decisions into their land use regulations. A decision to incorporate all, some, or none of the applicable comprehensive plan standards into land use regulations shall be undertaken as a post-acknowledgment amendment under ORS 197.610 to 197.625. *If a city or county does not incorporate its comprehensive plan provisions into its land use regulations, the comprehensive plan provisions may not be used as a basis for a decision by the city or county or on appeal from that decision.*"

(Emphasis added.) Thus, by its terms, ORS 197.195(1) provides that, if a local government does not incorporate specific plan provisions into its enactments, the "plan standards" set out in those provisions are not applicable. *See also Holland v. City of Cannon Beach*, 142 Or App 5, 920 P2d 562, *rev den*, 324 Or 229 (1996) (in considering application for subdivision, city was precluded from applying "comprehensive plan provisions that had not been incorporated into the city's land use regulations pursuant to ORS 197.195(1)").

We agree with LUBA that BSO 3.040(2) does not incorporate any specific standards set out in the general plan and that, accordingly, the city was not required to apply the general plan standards themselves in making its decision.

LUBA did not err in affirming that aspect of the city's approval.

C. *Orderly development standard*

■ Petitioner next argues that the plan failed to comply with requirements in the local development code pertinent to "orderly development." BSO 3.060(1) provides, in part:

"No application for subdivision or partition shall be approved unless the following requirements are met:

"A. The land division contributes to orderly development and land use patterns in the area, and provides for the preservation of natural features and resources and other natural resources to the maximum degree practicable as determined by the City of Bend.

"* * * * *

"C. The land division contributes to the orderly development of the Bend area transportation network of roads, bikeways, and pedestrian facilities, and does not conflict with existing public access easements within or adjacent to the land division."

In determining that the phased tentative plan did not violate the quoted provisions, the hearings officer relied on the fact that the proposed private street in this case is not an "integral link" in the city's street system that would serve land and subdivisions outside the development, that the street was instead not even a through street, and that there were a number of other "connections" to areas outside the proposed development. On appeal, LUBA determined that the "orderly development" standard embodied in the quoted ordinance provisions is imprecise, that the city therefore has "significant latitude" in determining whether a proposed development meets the standard, and that petitioner had not advanced any persuasive reason why the city's decision was erroneous in that regard.

On review, petitioner relies on an earlier proceeding before the city in which the city determined that, although private streets are permitted in subdivisions, they did not constitute orderly development in that case; petitioner asserts that, even assuming that LUBA correctly determined that the city has "significant latitude" in applying the orderly

development standard, the city's decision in its own earlier proceeding demonstrates that private streets typically do not meet that standard in Bend. In addition, based on inconsistencies in the record regarding the width of the private street—variously referred to in the hearings officer's decision as being 20, 24, and 28 feet wide—petitioner also asserts that the city's determination that the Dramens met the orderly development standard was not supported by substantial evidence in the record. Finally, petitioner asserts that, where LUBA agreed with his concerns regarding the planned cul-de-sac, street curbing, and block length, LUBA's determination that the plan constituted orderly development was at best premature and in all events lacked substantial reason.

The Dramens respond that the city's application of the "orderly development" standard in a factually different proceeding is not binding on the city, LUBA, or this court. They also argue that, to the extent that the hearings officer's decision contains factual inconsistencies, those inconsistences do not justify reversal in this case because the substantial evidence standard does not require all evidence in the record to yield the same conclusion. They assert that, consistently with ORS 197.850(9)(a) and *Younger v. City of Portland*, 305 Or 346, 358-59, 752 P2d 262 (1988), this court properly does not reweigh the evidence in the record. Rather, it considers whether—and in this case should conclude that—LUBA properly understood and applied its standard of review.

We agree with the Dramens and reject petitioner's argument without further discussion.

Reversed in part and remanded with instructions to remand to the city for further consideration; otherwise affirmed.