Argued and submitted October 5, 2006, reversed February 21, 2007

CONVENTION FOLIAGE SERVICE, INC.,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT,
*Respondent.*

Employment Department - Tax Section
T70690; A130021

153 P3d 163

Katharine W. Mathews argued the cause for petitioner. With her on the briefs were Montgomery W. Cobb and Cobb & Bossé, LLP.

Anna M. Joyce, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Deits, Judge pro tempore.

HASELTON, P. J.

**HASELTON, P. J.**

Petitioner Convention Foliage Service, Inc., seeks judicial review of an order issued by the Office of Administrative Hearings for respondent Employment Department concerning tax assessments against petitioner for certain periods in the years 2001 through 2004. That order determined that petitioner was not entitled to an "agricultural labor" exemption from unemployment compensation insurance taxes. ORS 657.045(1). On review, petitioner contends, principally, that the administrative law judge (ALJ) erred in determining that the "agricultural labor" exemption is inapplicable because petitioner primarily leases, rather than sells, the plants that it grows and maintains in its greenhouses. For the reasons set forth below, we agree with petitioner and, consequently, reverse.

Before describing the material facts, we summarize the applicable statutes. Under ORS chapter 657, Oregon employers generally must pay unemployment compensation insurance taxes based on their employment of Oregon workers. However, the statute includes several exemptions for the provision of various services. *See, e.g.*, ORS 657.043 (pertaining to performance of caddying services at golf courses); ORS 657.053(2) (exempting "service performed by an individual on a boat engaged in catching fish" under certain "arrangement[s]"). Among those exemptions is ORS 657.045, pertaining to "agricultural labor."

Three provisions of ORS 657.045 frame our review. *First*, ORS 657.045(1) provides, " 'Employment' does not include agricultural labor," so long as the employing entity does not exceed certain statutorily prescribed limits.[1]

---

[1] The "agricultural labor" exemption does not apply if the employing entity either:

"(a) During any calendar quarter in the current calendar year or the preceding calendar year paid remuneration in cash of $20,000 or more to individuals employed in agricultural labor; or

"(b) On each of 20 days during the current calendar year or the preceding calendar year, each day being in a different calendar week, employed in agricultural labor for some portion of the day (whether or not at the same moment of time) 10 or more individuals."

ORS 657.045(1)(a), (b). Here, respondent department does not contend on judicial review that petitioner exceeded either of those limits.

*Second*, ORS 657.045(3)(a) defines "[a]gricultural labor" as including all services performed:

"On a *farm*, in the employ of any person, in connection with cultivating the soil, or *in connection with raising* or harvesting *any agricultural or horticultural commodity*, including the raising, shearing, feeding, caring for, training and management of livestock, bees, poultry and fur-bearing animals and wildlife."

(Emphasis added.)

*Third*, ORS 657.045(5) defines "[f]arms" as including:

"[S]tock, dairy, poultry, fruit, fur-bearing animal, Christmas tree and truck farms, plantations, orchards, ranches, nurseries, ranges, *greenhouses or other similar structures used primarily for the raising of agricultural or horticultural commodities*."

(Emphasis added.)

Here, it is uncontroverted that petitioner's business involves leasing decorative plants, primarily for special events. Petitioner grows and maintains the plants in greenhouses and employs several workers to care for the plants. Petitioner did not pay unemployment taxes for those workers. In 2004, the Employment Department assessed unemployment insurance taxes against petitioner for portions of the tax years 2001 through 2004, and petitioner appealed the notices of tax assessment.

After the ensuing contested case hearing, the ALJ made the following findings of fact that are pertinent to our review:

"Convention Foliage Service, Inc. (the employer) operates a plant leasing business. The employer raises and maintains decorative plants which it leases out for conventions and other large events. The employer maintains the plants in pots which it stores in a number of large greenhouses. Maintenance of the plants requires extensive pruning, trimming, fertilizing, watering, re-potting, and treating with fungicides and pesticides. Many plants require extensive work after they are returned from an event by the

lessee to restore the plants to a condition suitable for decorative use.

"The employer purchases primarily mature plants for lease, although it occasionally grows some plants from 'cell packs' which are small thumb-sized plants. The employer does not grow the plants from seeds. The majority of the work in the greenhouses consists of maintaining existing plants, and not in growing new plants. The employer sells a minimal amount of its plants each year."

In contending that petitioner was not entitled to the benefit of the "agricultural labor" exemption, respondent argued that the fact that petitioner leased the vast majority of its plants, rather than selling them, was all-important. Indeed, respondent conceded that "all of the labors being performed [by petitioner's employees] would be agricultural in nature were it not for the fact that the greenhouse" leases its plants rather than sells them.

The ALJ agreed. In particular, the ALJ understood that, under *Just-A-Mere Farm v. Peet*, 247 Or 413, 430 P2d 987 (1967), and *Appleman v. Employment Division*, 21 Or App 186, 534 P2d 218 (1975), "a farm must involve the production and sale of annual crops and animals." Consequently, because the plants that petitioner raises and maintains in its greenhouses do not produce an annual yield and because petitioner sells few of its plants, the ALJ concluded that the plants were not "agricultural or horticultural commodities" for purposes of ORS 657.045(3) and (5).

■     On judicial review, petitioner raises two assignments of error: (1) The ALJ erred, as a matter of law, in concluding that the "agricultural labor" exemption is inapplicable because petitioner leases, rather than sells, all but a "minimal amount" of its plants. (2) The ALJ's finding that petitioner "purchases primarily mature plants for lease" is unsupported by substantial evidence. As amplified below, we agree with petitioner in both respects. Because our resolution of the second assignment of error informs—though is not dispositive of—our resolution of the first assignment, we begin by addressing petitioner's substantial evidence challenge.

As noted above, "agricultural labor" includes all services performed "[o]n a *farm* * * * in connection with *raising* * * * any agricultural or horticultural commodity[.]" ORS 657.045(3)(a) (emphasis added). "Farms" include, *inter alia*, "greenhouses * * * used primarily for the *raising* of agricultural or horticultural commodities." ORS 657.045(5). Thus, putting aside for the moment the meaning of "commodities," the "raising" of such products is a prerequisite to eligibility for the "agricultural labor" exemption. Petitioner contends that the ALJ's finding that petitioner purchases "primarily mature plants" is not only erroneous but also potentially material, because at least implicit in that finding is the suggestion that petitioner does not "raise" its plants—but, instead, merely "warehouses" and maintains them.

We need not determine whether the ALJ's finding could, if correct, support an alternative basis for rejecting petitioner's claim of exemption (on the ground that it was not "raising" the plants), because that finding is, in all events, unsupported by substantial evidence. *See Younger v. City of Portland*, 305 Or 346, 360, 752 P2d 262 (1988) (a finding of fact is supported by substantial evidence if the record, viewed as a whole, permits a reasonable person to make that finding).

Here, the evidence pertaining to petitioner's purchase of plants is straightforward. One of petitioner's owners, Conway, testified, without contradiction, that petitioner raises plants, but does not raise them from seed. Rather, petitioner buys seedlings or purchases growing plants and raises them "to whatever size we feel we need them after they're acclimated." Greenhouse workers' tasks involve fertilizing and repotting the plants. The average time that petitioner has a plant is six to eight months during which they are leased out for events, and after which they are generally discarded as unusable. On cross-examination, Conway testified that petitioner bought fewer plants that "just broke the soil" than "plants that were a little bigger" and had a better chance of living than the "new starts." That is the totality of the pertinent evidence.

Based on that evidence, we conclude that substantial evidence does not support the ALJ's finding that petitioner primarily purchases "mature" plants. In this context,

"mature" means "having attained the normal peak of natural growth and development : fully grown and developed." *Webster's Third New Int'l Dictionary* 1394 (unabridged ed 2002). The undisputed evidence shows that, although many of the plants that petitioner purchased were not seedlings, petitioner grew the plants it purchased to whatever size it needed in order to use them as decorative plants to be leased. Thus, the plants that petitioner bought were not fully grown and developed; they were not "mature" plants. The ALJ's contrary finding was unsubstantiated.

■ We return to the central issue: Did the ALJ err, as a matter of law, in determining that, because petitioner leased, rather than sold, the vast majority of its plants, those plants were not "agricultural or horticultural commodities" for purposes of the definitions of "[f]arms," ORS 657.045(5), and, derivatively, of "[a]gricultural labor," ORS 657.045(3)(a)? We do not understand respondent to dispute that the ornamental plants in question are "horticultural" within the plain meaning of that term. *See Webster's* at 1093 (defining "horticulture" as "the science and art of growing fruits, vegetables, flowers, or *ornamental plants*" (emphasis added)).

The question thus reduces to whether the plants that petitioner grows are "horticultural *commodities*." "Commodity," as used in this context, generally means "an economic good; *esp* : a product of agriculture, mining, or sometimes manufacture as distinguished from services." *Webster's* at 458. Respondent argues that leased goods, however, do not qualify as commodities. Respondent relies on a portion of the dictionary definition that indicates that a commodity is "something used or valued esp. when regarded as an article of commerce." *Id.* "Commerce," respondent contends, means "the exchange or buying and selling of commodities," citing *Webster's* at 456. Thus, respondent reasons, commodities must be bought and sold, not leased.

We reject respondent's extremely narrow and selective application of those definitions. As noted, the definition of "commodity" makes specific reference to agricultural goods, and also makes separate reference to "something used or valued," followed by the reference to "commerce." There is

no serious dispute that leased agricultural goods such as petitioner's ornamental plants are "used or valued." The final reference after that phrase—"esp[ecially] when regarded as an article of commerce"—does not import the limitation that respondent suggests, as the word "especially" means "particularly," or "notably," *id.* at 776, rather than "only." Thus, given the statutory definition of "farms," and the ordinary meaning of "raising" and "horticultural commodities," petitioner's raising of ornamental plants in a greenhouse for lease at special events constituted "raising" a "horticultural commodity" on a "farm." ORS 657.045(3), (5).

Nevertheless, as noted, the ALJ concluded that merely growing and maintaining plants was insufficient. Rather, the ALJ determined that both the Supreme Court's decision in *Just-A-Mere Farm* and our decision in *Appleman* compelled the conclusion that the plants needed to be harvested annually and sold in order for them to be "horticultural commodities" raised on a "farm" as those terms are used in ORS 657.045(3) and (5). The ALJ erred in that understanding.

In *Just-A-Mere Farm*, the question was whether, under a prior version of ORS 657.045, the raising of "forest-type trees for the purpose of eventually producing commercial timber" constituted "agricultural labor." The definition of "farm," in the 1967 version of ORS 657.045(3), contained no reference to tree farms, other than orchards. 247 Or at 416.[2] The pertinent portion of the definition of "agricultural labor," then found in ORS 657.045(2), was the same in all material respects as the definition currently found in ORS 657.045(3).

In considering whether the activities of the tree farm workers constituted "agricultural labor" on a "farm," the court first noted that no legislative history existed concerning the purpose of excluding "agricultural labor." 247 Or at 416. The court then canvassed the various reasons suggested for such an exclusion discussed by courts in other jurisdictions

---

[2] The current version of the statute, unlike the version at issue in *Just-A-Mere Farm*, specifically addresses the exception's applicability to forestry activities. *See, e.g.*, ORS 657.045(5) (exception is applicable to Christmas tree farms); ORS 657.045(6) (raising of forestry-type seedlings is agricultural labor when performed in a nursery).

and in treatises, focusing on the "difficulties involved in collecting the tax and the inconvenience and possible unfairness to farmers in reporting their tax because of the seasonal character of farming operations." *Id.* at 417. The court concluded that, because those considerations "would not ordinarily apply to an operation involving the growing of timber," "the operation of large 'tree farms' would not fall within the exclusion." *Id.* at 418. Finally, the court explained:

> "We reach this conclusion principally upon the basis of our understanding of the terms 'agricultural labor' and 'farm' as those terms are used in the vernacular. Although, with the development of the selective cutting of timber, it is not uncommon to refer to timber as a 'crop,' we do not think that in common parlance the growing of trees for the purpose of producing lumber is regarded as an agricultural operation, and we assume that ORS 657.045 was cast in terms of this common usage. *The types of activity described in ORS 657.045 in defining 'agricultural labor' relate directly or indirectly to operations which are commonly regarded as associated with farming in its traditional sense, i.e., where the work performed is directly or indirectly connected with the production and sale of that which the land yields annually in the form of crops or animals.*"

*Id.* at 418-19 (emphasis added).

In *Appleman*, the question was whether an unemployment claimant was entitled to benefits based on his work in an evergreen seedling nursery. 21 Or App at 187-88. The employer disputed benefits, invoking the "agricultural labor" exemption. Following *Just-A-Mere Farm*, we concluded that the exemption was not applicable because the raising of commercial timber seedlings was not farming in its "traditional sense," and because "[t]imber tree seedlings are not 'agricultural or horticultural commodities' as these terms are commonly used and understood." *Id.* at 192, 193. *But see* 211 Or App at 111 n 2 (current version of statute includes this type of activity within the definition of "agricultural labor").

Neither *Just-A-Mere Farm* nor *Appleman* compels us—in a dramatically different circumstance—to deviate from the plain meaning of the statute. Both of those cases were decided at a time when the statute contained no explicit references to tree farms. Thus, the courts were faced with

determining whether, as a generic matter, employers engaged in a class of activity that was not commonly understood to be "agricultural" and that was not specifically listed in the statute were nevertheless entitled to avail themselves of the benefit of the statutory exemption. Here, by contrast, the question is much more straightforward. The definition of "[f]arms" explicitly includes "greenhouses * * * used primarily for the raising of * * * horticultural commodities." ORS 657.045(5). Petitioner raises ornamental plants—an activity that clearly constitutes horticulture—in greenhouses.

Respondent's predominant rejoinder, based on the above-emphasized language from *Just-A-Mere Farm*, is that the ornamental plants cannot be "commodities" because petitioner does not raise them for "sale" and because they are not "that which the land yields annually." 247 Or at 419. We disagree. We do not read *Just-A-Mere Farm* as limiting the plain meaning of the words used in ORS 657.045 by inserting the additional requirement that, regardless of the character of the work performed, the exemption can apply only if crops are harvested annually and then sold.[3] Indeed, such a construction would be contrary to ORS 174.010 (in construing a statute, a court is "not to insert what has been omitted, or to omit what has been inserted").

Rather, the court in *Just-A-Mere Farm* was attempting to determine whether an activity *not specifically mentioned in the statute* was nevertheless included—and it did so by reference to what it "commonly regarded as associated with farming in its traditional sense." 247 Or at 419. Conversely, the court did not suggest that activities expressly encompassed within the statute should nonetheless be excluded because those activities did not comport with the court's understanding of farming "in its traditional sense."[4]

---

[3] Indeed, a number of crops, particularly crops grown in greenhouses, may well be harvested on other than an annual basis. *Cf. West Foods, Inc. v. Morgan, Orr*, 16 Or App 613, 519 P2d 1062 (1974) (mushrooms grown in sheds and harvested daily were considered "agricultural or horticultural commodities" for purposes of ORS 657.045).

[4] In fact, the court went on to note that *some* of the activities specified in the statute did *not* fit within its "concept of farming as it is understood in common parlance." 247 Or at 419. The court referred particularly to a subsection of the statute (which has since been deleted) that included within "agricultural labor" various packaging and processing of agricultural and horticultural commodities if "such service is performed as an incident to ordinary farming operations." *Id.*

Again, such a construction could not be squared with the dictates of ORS 174.010.

In sum, the work performed by petitioner's greenhouse employees constituted "agricultural labor" for purposes of ORS 657.045(1). The ALJ erred in concluding otherwise.

Reversed.